**UNITED STATES of America, Appellant**

v.

**Joseph A. BELLOSI, a/k/a Joe Stanford, et al.**

**No. 73-2223.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 10, 1974.

Decided June 28, 1974.

---

33. *See* note 8 *supra.*

E. Lawrence Barcella, Jr., Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., and John A. Terry and John E. Drury, III, Asst. U. S. Attys., were on the brief, for appellant.

Roger E. Zuckerman, Washington, D. C., with whom John A. Shorter, Jr., Washington, D. C., Thomas R. Dyson, Jr., Alexandria, Va., and James L. Lyons, Cincinnati, Ohio, were on the brief, for appellees.

Before WRIGHT, ROBINSON and MacKINNON, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

Appellees have been charged with various criminal offenses relating to illegal gambling operations.[1] Their indictment was based at least in part on evidence obtained through interception of telephone communications. Prior to trial appellees moved to have this evidence suppressed. The District Court granted their motion on the basis of 23 D.C.Code § 547 (1973) and 18 U.S.C. § 2518 (1970) which prescribe the procedure by which District of Columbia and United States law enforcement authorities may obtain requisite judicial authorization for interception of wire and oral communications. The District Court found that the Government, in securing approval for the interceptions from which the incriminating evidence was derived, had failed to conform to the mandate of 23 D.C.Code § 547(a)(5) and 18 U.S.C. § 2518(1)(e) that applications for judicial authorizations of wire interceptions include a full disclosure of "all previous applications" for judicial authorization of interceptions "involving any of the same persons, facilities, or places specified in the application."[2]

On this appeal the Government advances three attacks on the District Court's decision. First, while admitting that it purposely did not disclose in its applications the fact that one of the targets thereof had also been a target of an earlier application, the Government contends that it did not violate Sections 547(a)(5) and 2518(1)(e) because the prior application related to a narcotics investigation completely separate from the gambling investigation which pro-

---

1. Each of the 11 appellees has been charged with conspiracy, 18 U.S.C. § 371 (1970), to conduct an illegal gambling operation in violation of 18 U.S.C. § 1955 (1970) and to operate a lottery in violation of 22 D.C.Code § 1501 (1973). Eight of the appellees have been charged with maintaining gambling premises, 22 D.C.Code § 1505 (1973); two have been charged with possession of numbers slips, 22 D.C.Code § 1502 (1973); and two have been charged with unlawful possession of a pistol, 22 D.C.Code § 3203 (1973).

2. 23 D.C.Code § 547(a)(5) (1973) provides in full:

(a) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge and shall state the applicant's authority to make the application. Each application shall include—

\* \* \* \* \*

(5) a full and complete statement of the facts concerning all previous applications, known to the individual authorizing or making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the same persons, facilities, or places specified in the application, and the action taken by the judge on each such application

\* \* \*.

18 U.S.C. § 2518(1)(e), quoted in full at note 10 infra, is identical except for a few minor differences in wording which all parties agree are not relevant to this case.

The D.C.Code provision applies to applications authorized by the United States Attorney for interceptions to be conducted by D. C. law enforcement authorities as part of an investigation of suspected violations of certain specified serious D.C. crimes. See 23 D.C.Code § 546 (1973). The U.S.Code provision applies to applications authorized by the Attorney General or an Assistant Attorney General for interceptions to be conducted by a federal law enforcement agency investigating certain specified serious federal crimes, as well as to applications for wire interception authorization submitted by state law enforcement agencies. See 18 U.S.C. § 2516(1) & (2) (1970). The court has been advised that both the D.C.Code and the U.S.Code provisions were used to obtain judicial authorization for incriminating wire interceptions in this case. See text at note 4 infra.

duced the incriminating interceptions in suit. Second, the Government argues that, even if it was not in compliance with Sections 547(a)(5) and 2518(1)(e), suppression of the evidence obtained from the thus tainted interceptions was an inappropriate remedy. And third, the Government maintains that in any event only the appellee-defendant who was named as an object of the undisclosed interception should have standing to move for a suppression order. Guided by the Supreme Court's recent decision in United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L. Ed.2d 341 (1974), we reject each of the Government's arguments and affirm the challenged suppression.

## I

The facts of this case relevant to our decision can be briefly and simply set forth. On or about July 29, 1971 the Government, in connection with a local narcotics investigation, obtained authorization from United States District Judge George L. Hart, Jr., pursuant to Section 2518, for wire interception of a pay telephone located in the Jet Liquor Store. The Government stated in its application to Judge Hart that this interception was directed at three individuals, one of whom was appellee Warren Cooper.

Within the next few months the Metropolitan Police Department initiated a second investigation of Warren Cooper and certain other individuals for suspected illegal gambling operations. As part of this investigation the Government, pursuant to Section 547, submitted to Chief Judge Harold H. Greene of the Superior Court of the District of Columbia on November 15, 1972 a request for authorization to intercept communications from an apartment telephone on Second Street, S. E. Though the submission named Warren Cooper as one of the targets of the wire interception for which authorization was sought, it

did not inform Chief Judge Greene of the prior application to Judge Hart in 1971 to intercept communications of Warren Cooper through the Jet Liquor Store telephone.

The Government does not deny on appeal that its omission of any reference to the 1971 application in its November 15, 1972 application to Chief Judge Greene was intentional. Apparently concerned that the Jet Liquor Store interception involving appellee Cooper might be deemed violative of the Fourth Amendment and that it might be in some way connected with the gambling investigation,[3] the Government made the deliberate and unilateral determination that Chief Judge Greene did not need to be aware of the prior application in making his decision whether to authorize the Second Street, S. E. interception. In making that determination the Government was fully aware of Section 547(a)(5)'s requirement that an application for judicial authorization of a wire interception disclose "*all* previous applications * * * made to any judge for authorization to intercept * * * wire or oral communications involving any of the same *persons*, facilities, *or* places specified in the application." (Emphasis added.) The Government attempted to circumvent this language without making any overtly false statements by averring in its application that no previous applications had been made for authorization of wire interceptions involving any of the same *facilities or places*.[4] It made no statement concerning previous applications for interceptions involving any of the same *persons*.

Chief Judge Greene granted the Government's request for authorization of the Second Street, S. E. interception. Evidence obtained from this interception moved the Government to expand its gambling investigation of Cooper and the other suspects. During the next several weeks it requested and obtained from Chief Judge Greene, pursuant to

---

3. *See* transcript of proceedings on motions to suppress, Sept. 11–12, 1973, at 30–31.

4. Brief for appellant at 4–5; brief for appellees at 12.

Section 547, authorization for interception of communications from a telephone in an apartment on 12th Street, N. E. as well as for an extension of the wiretap on the Second Street, S. E. telephone. The Government, pursuant to Section 2518, also obtained from Judge Hart in January 1973 approval for an interception of communications from a telephone in a 42nd Street, N. E. apartment. Although Warren Cooper remained one of the targets of these additional wire interceptions, in none of the applications did the Government disclose the existence of the prior Jet Liquor Store application directed against Cooper.

It was not until June 25, 1973 at a pretrial hearing in this case that the Government finally advised defense counsel of the Jet Liquor Store wiretap and the fact that through its use over 100 telephone calls relating to gambling operations had been intercepted. Having been so informed, the defendants moved to suppress the evidence derived from the later wire interceptions targeted against Warren Cooper, the applications for which did not disclose that he had been a named target in a prior application. The Government's appeal here is from the District Court's grant of this motion.

## II

■ The Government concedes that the words of Sections 547(a)(5) and 2518(1)(e) seem to constitute a broad command which was transgressed by the failure to disclose the Jet Liquor Store application. However, the Government asks this court to transform Sections 547(a)(5) and 2518(1)(e) into more limited prescriptions which were not violated in this case and which the Government argues adequately fulfill the congressional purpose in enacting these provisions. The Government maintains that Congress enacted the requirement that applications for wire interception authorizations include a statement of facts concerning previous applications involving any of the same persons, facilities, or places solely to prevent law enforcement officials from shopping from one judge to the next until they obtain the approval they must have to conduct an interception. The Government reasons that this congressional purpose is adequately served by a requirement that applications for judicial authorizations of interceptions disclose previous applications only if they were part of the same investigation and that the statute should be so interpreted. Since the Jet Liquor Store interceptions were conducted in a narcotics investigation independent of the gambling investigation which led to the authorization of the incriminating interceptions here, were we to accept the Government's theory we might be able to reverse the District Court's suppression order. However, we are constrained to reject the invitation to place such a limiting gloss on the clear language of Sections 547(a)(5) and 2518(1)(e).

Section 2518(1), after which Section 547(a) was fashioned for District of Columbia law enforcement, is part of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 197, 211–225, 18 U.S.C. §§ 2510–2520 (1970). The "fundamental policy adopted by Congress on the subject of wiretapping and electronic surveillance" by its enactment of Title III "is strictly to limit the employment of those techniques of acquiring information," Gelbard v. United States, 408 U.S. 41, 47, 92 S.Ct. 2357, 2361, 33 L.Ed.2d 179 (1972), to conform with the commands of the Fourth Amendment as articulated by the Supreme Court in Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). To effectuate that policy, "Title III authorizes the interception of private wire and oral communications, but only when law enforcement officials are investigating specified serious crimes and receive prior judicial approval, an approval that may not be given except upon compliance with stringent conditions." Gelbard v. United States, *supra*, 408 U.S. at 46, 92 S.Ct. at 2360.

One of these "stringent conditions"—that applications for judicial approval of wire interceptions to be conducted by federal investigative agencies must be authorized by the Attorney General or a specially designated Assistant Attorney General, 18 U.S.C. § 2516(1) (1970)—was recently considered and construed by the Supreme Court in strict accordance with the statutory language in United States v. Giordano, *supra*.[5] The Supreme Court in *Giordano* unanimously refused to accept the Government's attempt to stretch the language of Section 2516(1) to permit the Attorney General to delegate his interception authorization power to any subordinate Justice Department official. The Court stressed that "Congress legislated in considerable detail in providing for applications and orders authorizing wiretapping" and thereby "evinced the clear intent to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications."[6] The Court refused, therefore, to sanction an attempt by the Government to interpret what seemed a clearly worded provision of Title III in a manner which would make obtaining an authorization for interception easier for an investigative agency. The Court held instead that Section 2516(1) meant exactly what it said: only the Attorney General or a specially designated Assistant Attorney General could authorize an interception application.

By asking us to refashion another clearly worded provision in Title III in a way that would somewhat ease another of the "stringent conditions" with which a law enforcement agency must comply before conducting an interception, the Government effectively asks us to do what the *Giordano* Court would not. Section 2518(1) is no less important than Section 2516(1) to Congress' legislative scheme to allow only limited governmental interception of wire or oral communications. Section 2518(1) provides that the judge from whom interception authorization is sought be provided with a detailed and particularized application containing that information which Congress thought necessary to judicial consideration of whether the proposed intrusion on privacy is justified by important crime control needs. *See* United States v. United States District Court, 407 U.S. 297, 302, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972).[7] The application required to be submitted is to include a complete statement of the "facts and circumstances relied upon by the applicant" to justify his belief that the interception is warranted by law enforcement needs[8] and a full statement as to whether other investigative procedures have been tried and failed or why they appear unlikely to succeed if tried.[9] Section 2518(1)(e) provides that the detailed and particularized information to be submitted must also include a full description of previous applications for interceptions involving the same persons, facilities, or places and the action taken by the judge on each such application.[10]

---

5. Applications for judicial approval of wire interceptions conducted by D.C. law enforcement authorities in investigating suspected violations of the D.C.Code must be approved by the United States Attorney for the District of Columbia or any of his designated assistants. *See* 23 D.C.Code §§ 541(11) & 546 (1973) and note 2 *supra*.

6. United States v. Giordano, 416 U.S. 505, 515, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 (1974).

7. *Cf.* Terry v. Ohio, 392 U.S. 1, 20–21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

8. 18 U.S.C. § 2518(1)(b) (1970). 23 D.C. Code § 547(a)(2) imposes the same requirement.

9. 18 U.S.C. § 2518(1)(c). 23 D.C.Code § 547(a)(3) also imposes this requirement.

10. 18 U.S.C. § 2518(1) provides in full:

(1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such applica-

We cannot say that Congress' purpose in requiring disclosure of such past applications was limited to prevention of "judge-shopping" by the Government. Congress could have considered other additional reasons why a judge who must decide whether to authorize a major intrusion on the privacy of particular individuals would want to be aware of previous attempts by the Government to intrude on the privacy of the same individuals, or even on other individuals through use of the same facilities or places. A judge balancing constitutionally protected privacy interests of particular citizens would want to know whether the Government had previously attempted to invade those interests. He might be more hesitant to authorize further interception of conversations of an individual who had been subjected frequently in the past to electronic surveillance. He might also desire to learn how protective other judges had been of the privacy interests which would have to be invaded by an interception of the communications of the individuals who are the targets of the application before him. Another judge's decision to deny or grant an application to invade these interests could be informative even if made in the context of a separate investigation. The prior judge's decision might even suggest ways by which an interception could be conditionally approved, such as limiting its operation to certain hours, in order to serve crime control needs with minimal encroachment on rights of privacy.[11] In addition, the judge might desire to use the supplemental inquiry power vested in him by Section 2518(2) [12] to determine the results of previously authorized interceptions involving the same persons, facilities, or places. If these interceptions had intruded substantially on the privacy of innocent individuals without providing law enforcement authorities with any significant evidence, the judge might scrutinize more carefully an appli-

tion. Each application shall include the following information:

    (a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application;

    (b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;

    (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;

    (d) a statement of the period of time for which the interception is required to be maintained. If the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;

    (e) a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application; and

    (f) where the application is for the extension of an order, a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results.

11. Section 2518(5) states that "[e]very order and extension thereof shall contain a provision that the authorization to intercept shall be * * * conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter * * *." See also 23 D.C.Code § 547(g).

12. Section 2518(2) provides:

    The judge may require the applicant to furnish additional testimony or documentary evidence in support of the application. See also 23 D.C.Code § 547(b).

cation for further interceptions even if submitted in a separate investigation. Finally, and perhaps most pertinent to this case, a judge might choose to refuse authorization of a wire interception when an applicant relies on "facts and circumstances" derived from a previous illegal wiretap to justify his belief that the interception is warranted by law enforcement needs. A judge fully informed of previous applications involving the same persons, facilities, or places could inquire under Section 2518(2) into whether any of these applications resulted in interceptions which were not fully legal and, if so, whether any evidence obtained from the previous interceptions provided the basis for the authorization request presented to him.

The Government can point to nothing in Section 2518(1)(e) which would assure us that Congress enacted this provision only to prevent "judge-shopping." Without persuasive legislative history we cannot draw an inference sufficient to warrant disregard of the express language of the statute from the fact that Section 2518(1) requires only disclosure of all previous *applications* rather than disclosure of all previous *interceptions* involving the same persons, facilities, or places. To be sure, disclosure of interceptions for which the Government had not submitted applications would not help to determine whether the Government had engaged in "judge-shopping," but applications authorized by other judges would be equally irrelevant to such a determination. If prevention of judge-shopping were the sole aim of Section 2518(1)(e), Congress would have required disclosure of only unapproved prior applications. Moreover, in specifying prior applications rather than prior interceptions, we think Congress could assume that United States law enforcement officials would at least attempt to comply with its legislative scheme to regulate wire interceptions by filing an application for judicial approval. And it must have been aware that, if some irresponsible law enforcement official does conduct an interception totally ignoring the prescriptions of Title III, it is not likely that this interception would be disclosed in an application for another interception.[13]

We also cannot agree with the Government that the legislative evolution of Section 2518(1)(e) shows that Congress meant its words requiring disclosure of prior applications to mean less than they say. The Government admits in its brief to this court that the "written legislative history of Title III" does not "amplify the meaning of section 2518(1)(e) beyond the words in the statute."[14] It nonetheless emphasizes that wire intercept legislation considered by the Senate in 1961 required reporting of only those prior wire interception applications "involving the same communications facilities for the same or similar purpose."[15] But this legislation did not

13. Congress may have required disclosure of all previous *applications*, instead of all prior *interceptions*, to avoid unduly burdening the Government and to avoid an ambiguity which inheres in the latter word and which is not clearly resolved by its use elsewhere in the statute. *Wire interceptions* could refer to continuing wiretaps on particular telephones for particular periods of time; however, the term could also refer to individual intercepted telephone conversations. If the word *interception* had been used in § 2518(1)(e) and if it were given the latter interpretation, the Government would have had the substantial burden of informing the judge from whom an authorization was sought of each individual conversation which had been previously intercepted using the same facilities or places or involving the same persons; for

example, there were apparently several hundred conversations intercepted by the Jet Liquor Store wiretap. Such disclosure in many cases is unnecessary. Given the judge's supplemental inquiry power under § 2518(2), in cases where the judge finds that additional information concerning prior applications is needed to act on the pending one, he can order the Government to produce it.

14. Brief for appellant at 16.

15. S. 1495, 87th Cong., 1st Sess., § 4(e)(4) (1961), *in* Hearings Before the Senate Committee on The Judiciary, 87th Cong., 2d Sess., on S. 2813 and S. 1495, Wiretapping —The Attorney General's Program—1962, at 6–10.

**840**

pass Congress and its development into the enacted Section 2518(1)(e) suggests to us, if anything, that Congress purposefully broadened the command for disclosure of previous applications into its present form.[16]

The Government's analysis of Section 2518(1)(e) falls far short of convincing us that, notwithstanding the Supreme Court's fidelity to Title III's precise wording in *Giordano*, we should ease one of the clearly worded "stringent conditions" with which a law enforcement agency must comply before conducting an interception of wire or oral communications.[17]

### III

■ We also rely on United States v. Giordano, *supra*, in rejecting the Government's second challenge to the suppression order—that under controlling statutory provisions suppression of derived evidence is an inappropriate remedy for violations of Sections 547(a)(5) and 2518(1)(e). As the District Court recognized, the appropriateness of utilization of the suppression remedy in this case is determined by 23 D.C.Code § 551(b) (1973) and 18 U.S.C. § 2518(10)(a) (1970), after which the D. C.Code provision was modeled. 18 U.S.

C. § 2518(10)(a) provides, in pertinent part:

> Any aggrieved person * * * may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—
>
> (i) the communication was unlawfully intercepted;
>
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
>
> (iii) the interception was not made in conformity with the order of authorization or approval.[18]

All parties agree that clauses (ii) and (iii) are not applicable to this case. The Government's interpretation of clause (i) would render that clause inapplicable as well. The Government argues that communications are only "unlawfully intercepted" when made without authorization of a court order based upon a sufficient showing of probable cause. The *Giordano* Court, however, in the face of the same Government argument, interpreted clause (i) quite differently. The Court held that by inclusion of clause (i) "Congress intended to require suppression where there is failure to satisfy any of those

---

16. We do not think our refusal to dilute the meaning of § 2518(1)(e) will burden the Justice Department. *Cf.* United States v. Kahn, 415 U.S. 143, 153, 94 S.Ct. 977, 39 L. Ed.2d 225 (1974). The Attorney General is required under 18 U.S.C. § 2519(2) (1970) to make a full annual report of all applications for interceptions as well as of all interceptions authorized and the results of the interceptions actually conducted. The information contained in these annual reports could undoubtedly be easily merged and indexed with that in earlier reports.

17. In another case decided earlier this term, United States v. Kahn, *supra* note 16, the Court also rejected an attempt by individuals incriminated by a wire interception to "engraft" additional language on "the precise wording chosen by Congress in enacting Title III." 415 U.S. at 151, 94 S.Ct. at 982. Applicants for judicial authorization of wire

interceptions are required by 18 U.S.C. § 2518(1)(b)(iv) to state "the identity of the person, if known, committing the offense [being investigated] and whose communications are to be intercepted." The defendant Kahns argued that this language should be judicially altered to read "all persons, known or discoverable, who are committing the offense and whose communications are to be intercepted." 415 U.S. at 152, 94 S.Ct. at 983. The Court declined to so expand the meaning of § 2518(1)(b)(iv). It stressed that courts must look to the "precise wording" of Title III to determine how Congress on any particular issue resolved the tension between law enforcement needs and its "expressed concern for the protection of individual privacy."

18. 23 D.C.Code § 551(b) (1973) provides two additional grounds for suppression, neither of which is relevant here.

statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." 416 U.S. at 527, 94 S.Ct. at 1832.

The *Giordano* Court found that Section 2516(1)'s prescription that applications for judicial approval of interceptions be authorized by the Attorney General or a specially designated Assistant Attorney General constituted one of those requirements. We find that Section 2518(1)(e) provides another. We set out, at pages 838–839 *supra,* our analysis of the reasons why a judge considering whether an intrusion on individual privacy was warranted would want to know of previous applications for interceptions involving the same persons, facilities, or places. That analysis sets forth several ways, including but not limited to preventing "judge-shopping," by which the command of Section 2518(1)(e) "implement[s] the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." [19] Section 2518(1)(e), along with other provisions of Section 2518(1),[20] helps to ensure that judges obtain the information they need to determine whether law

enforcement authorities are being over-zealous in their efforts to employ wire-tapping and electronic surveillance in situations where a lesser intrusion on privacy would serve the investigative need. And the Government could well anticipate judicial approval of a higher proportion of its intercept applications if, as here, it could selectively choose not to disclose previous applications involving the same persons, facilities, or places.[21]

## IV

■ We find the Government's third challenge to the suppression order to be its weakest. The Government contends that only Warren Cooper, the appellee who was a target of the undisclosed Jet Liquor Store application as well as the application in suit, should have standing to move for suppression of the evidence derived from the latter application. It is thus the Government's position that, whatever our resolution of its first two challenges to the suppression order, the derived evidence should be admissible in the trial of all appellees except Cooper.

In taking this position, however, the Government completely ignores provisions in the D.C.Code and analogous sections in Title III which specify those individuals who have standing to move for a suppression order. 23 D.C.Code §

---

19. United States v. Giordano, *supra* note 6, 416 U.S. at 527, 94 S.Ct. at 1832.

20. *See* note 10 *supra* and accompanying text.

21. In a companion case to *Giordano,* United States v. Chavez, 416 U.S. 562, 575, 94 S.Ct. 1849, 1856, 40 L.Ed.2d 380 (1974), the Court considered two provisions of Title III which it held did not establish "statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures." These provisions, 18 U.S.C. § 2518(1)(a) & (4)(d), require that applications for judicial approval of an interception and an order granting such approval correctly identify the Justice Department official who authorized the application. The Court found that these requirements, while serving to "fix responsibility" for the source of preliminary authorization and to aid judges in fulfilling their reporting responsibilities under Title III, *see*

18 U.S.C. § 2519, do not help to implement the congressional intent to eliminate over-zealous use of wire interceptions. The Court stated:

* * * We do not perceive any purpose to be served by deliberate misrepresentation by the Government in these circumstances. To the contrary, we think it cannot be seriously contended that had the Attorney General been identified as the person authorizing the application, rather than his subordinate, Assistant Attorney General Wilson, the district judge would have had any greater hesitation in issuing the interception order. * * *

416 U.S. at 572, 94 S.Ct. at 1854. As stated in text, we do perceive reasons why the Government would be tempted to misrepresent previous applications for interceptions involving the same persons, facilities, or places.

551(b) and 18 U.S.C. § 2518(10)(a) state that "[a]ny aggrieved person * * * may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom," on the grounds set forth in Part III above. 23 D.C.Code § 541(9) (1973) and 18 U.S.C. § 2510(11) define "aggrieved person" as "a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed."

The Government argues that the purpose of suppression is solely deterrence of illegal law enforcement activity. It contends that violations of the Section 2518(1)(e) prescription that prior applications involving the same persons be disclosed would be sufficiently deterred if the only victims of an interception violative of this section who had standing to suppress the evidence derived therefrom were those parties involved in the undisclosed applications. Though we would question the Government's judgment on how much a zealous law enforcement official would be deterred under its standing formula, we do not need to do so. It is sufficient to state that the Government's position has not been accommodated by the unambiguous criterion of standing set forth in Sections 2518(10)(a) and 2510(11).[22]

From all that can be discerned from the record before us, it may be true that one or more of the appellees requested suppression in his trial of evidence derived from a communication to which he was not a party and which was intercepted by an illegal wiretap not directed against him. However, the Government does not allege before us that any of the appellees do not fit within the statutory definition of an "aggrieved person" and there is no reason why the District Court could not give the Government an opportunity to do so before trial or dismissal of the indictments.

Affirmed.

MacKINNON, Circuit Judge:

I concur in the result and the analysis of the direct facts related thereto but do not necessarily agree with all the hypothetical situations discussed at pages 838–839, inclusive.

22. Nothing in the legislative history of Title III gives us any reason to twist the meaning of these sections. There is a statement in the Senate Report on the Omnibus Crime Control Act indicating that Congress intended that §§ 2518(10)(a) & 2510(11) be consistent with existing law on when a party has standing to invoke the 4th Amendment for a suppression motion. S.Rep.No. 1097, 90th Cong., 2d Sess., 91 (1968). However, the Supreme Court's leading decision on standing to move to suppress evidence derived from electronic surveillance violative of the 4th Amendment, Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed. 2d 176 (1969), is completely consistent with the § 2510(11) standard.

Alderman held that those aggrieved by introduction of damaging evidence derived from an illegal electronic surveillance, but not by the surveillance itself, do not have standing to move for suppression. 394 U.S. at 171–176, 89 S.Ct. 961. The Alderman Court, unlike § 2510(11), did not explicitly define individuals against whom illegal surveillance was directed, as well as those whose conversations were actually intercepted, as persons aggrieved by the surveillance. However, the Court cited the provisions of Title III as consistent with its opinion, id. at 175 n. 9, 89 S.Ct. 961, and quoted approvingly the following suggestive language from Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960):

In order to qualify as a "person aggrieved by an unlawful search and seizure" one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. . . .

Id. at 173, 89 S.Ct. at 966. Jones was also cited by the Senate Report on the Omnibus Crime Control Act as the existing law which § 2510(11) was to reflect. S. Rep. No. 1097, supra, at 91. See also United States v. King, 9 Cir., 478 F.2d 494, 506 (1973).