**UNITED STATES of America,
Plaintiff,**

v.

**Vincent PICONE et al., Defendants.**

**No. 75–2–CR2.**

United States District Court,
D. Kansas.

Nov. 7, 1975.

William Zleit, Department of Justice, Kansas City, Mo., for plaintiff.

James R. Wyrsch, Kansas City, Mo., for defendant Vincent Picone.

Anthony J. Romano, Kansas City, Mo., for defendant Anthony Simone.

James Eisenbrandt, Mission, Kan., for defendant Joseph Goodfellow.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

On January 27, 1975, the above-named defendants were arraigned in this court to answer charges contained in an indictment that they had violated 18 U.S.C. § 1952. After pleading not guilty, defendants thereafter filed numerous motions seeking to have the indictment quashed, wiretap evidence suppressed, and additionally, seeking discovery of various materials and documents. The court set the motions for hearing, and on April 8, held a hearing on the matters raised therein. On May 1, a conference was held with the court regarding these pretrial matters, and defendants' attorneys agreed with government counsel that a further evidentiary hearing plus possible stipulations of fact would be required on three issues for proper submission of them for decision. It was further agreed that the remaining questions could be submitted for determination without an evidentiary hearing. (Memorandum and Order, May 2, 1975.)

On June 5 and 6, a further hearing was held on the questions of minimization of wire and oral interceptions, whether the government had probable cause to name defendant Simone in its October 5, 1973 application for a court order authorizing interception of wire and oral communications, and the man-

ner in which the search warrant was executed as to defendant Picone. At the June 5th hearing, a stipulation between government counsel and defense counsel was received into evidence. (Document No. 103.) A final hearing was held July 8, on the government's motion for reconsideration of the court's ruling on April 8, that wiretap evidence as to the defendant Goodfellow should be suppressed.[1] This motion was denied. The case now stands submitted on the briefs and stipulations which have been filed, and upon the matters presented during the hearings. Before ruling on the legal questions listed in our order of May 2nd, the court believes it may be helpful to briefly summarize the general factual background underlying this complex case.

Pursuant to court-authorized wiretap orders entered October 5, 1973 and November 6, 1973, by Judge Collinson of the United States District Court for the Western District of Missouri, various telephonic communications were intercepted and the government now seeks to use the evidence derived from these wiretaps to establish that defendants Picone and Simone violated 18 U.S.C. § 1952. [See the June 3, 1975 stipulation at 17(a).] It is undisputed that defendant Simone was not named in the October 5th wiretap order. Simone was, however, named in the November 6th order. [June 3rd stipulation at 17(a).] Picone was named in both of the above orders. In addition, search warrants authorizing the search of defendant Picone's person, his residence, and several automobiles were executed December 9, 1973. Evidence derived from these searches is also sought to be used by the government. This brief summary provides the background from which the various questions presented for our determination arose.

The minimization issue is urged by both defendants Picone and Simone, and stems from the requirement set forth in 18 U.S.C. § 2518(5). One of the purposes of the June 5th hearing was to allow the defendants an opportunity to present evidence on this issue.[2] The June 3rd stipulation covers the minimization question, and was received into evidence at the June 5th hearing. Under this stipulation, after counsel for defendants Picone and Simone had listened to and reviewed the tapes made of the wire intercepts, their affidavits setting forth their analyses of the tape contents with respect to the minimization of the intercepts were to be submitted to the court. It was also agreed that the government could, if it deemed such action appropriate, file a counter-affidavit.

The affidavit filed on behalf of defendant Picone (docket entry No. 113) reveals that tape recordings were made of calls to and from telephone number 816-454-7093,[3] that these recordings were listened to by Picone's counsel, and that the recordings covered the time period between October 6, 1973 and November 11, 1973 and the time period between November 12, 1973 and November 25, 1973. A breakdown of calls provided by counsel for Picone indicates that: (1) the total number of intercepts was 1,525; (2) the total number of calls related to the alleged business enterprise of gambling was 723; (3) the total number of calls that are "partly related and partly not related to the alleged business enterprise of gambling," and that were *not* properly minimized was 36; (4) the total number of calls properly minimized was 246; and (5) the total number of calls defendant Picone contends were not properly minimized was 281.

Counsel for Picone has also provided a breakdown of the calls to and from tele-

---

1. The motion to suppress as to defendant Goodfellow was sustained at the April 8th hearing in view of the government's admission that it had probable cause to name Goodfellow in its application for the October wiretap order and failed to do so. See *United States v. Bernstein,* 509 F.2d 996 (4th Cir. 1975).

2. See our Memorandum and Order of May 2, 1975, and the transcript of the June 5th hearing at page four.

3. This number was for the telephone located at 4112 North Walrond Avenue, Kansas City, Missouri, the residence of Picone.

phone number 816–241–4973, the telephone number belonging to one John Costanza, who is not charged in the indictment involved here. Under this analysis, the total number of wire intercepts is listed as 484, and the total number of calls the defendant contends were not properly minimized is 125.

In addition to this numerical analysis, counsel for Picone has provided two lists of calls claimed to be non-minimized, and has stated the substance of the calls. The first list contains 220 calls made to and from number 816–454–7093. The second list contains 123 calls made to and from number 816–241–4973.

Counsel for defendant Simone has provided a similar summary, and contends that 99 of the 128 total conversations intercepted from the telephone at the Necco Tea and Coffee Company were not properly minimized; that 249 of the 699 total conversations intercepted from telephone number 816–231–1684 were not properly minimized; that 185 of the 315 total conversations intercepted from telephone number 816–231–1721 were not properly minimized; and that 19 of the 254 total conversations intercepted from telephone number 816–842–5789 did not involve illegal gambling and were of one minute or less duration.

In response, the government contends that these statistical summaries are both inaccurate and misleading, and asserts that a detailed response to the statistical breakdown is not possible "due to the manner of defendants' presentation on this point." The government has, however, included the highly detailed affidavit of special agent Schucker in its response on the minimization issue, and this affidavit disputes defense counsels' characterization of various calls as being non-minimized.* The government contends that the Schucker affidavit makes it clear that the majority of the particular calls set forth by both Simone's and Picone's counsel were in fact terminated by the monitoring agents within a matter of seconds and before completion, or were of such a brief duration that a determination of the nature of the call could not reasonably have been made before the call was itself terminated.

In addition, the government argues that under *United States v. James,* 161 U.S.App.D.C. 88, 494 F.2d 1007 (1974), *cert. denied* 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 and specifically the four factors listed therein, it has complied with the minimization requirement in 18 U.S.C. § 2518(5). The government argues that since the purpose of seeking wiretap approval was to identify all the participants of the gambling conspiracy, and to identify their methods, and inasmuch as minimization procedures were set-up and implemented,[4] that the interception of some non-pertinent calls should not be equated with a failure to minimize. Further, the government points to the fact that close judicial supervision over the interceptions involved here was exercised by the use of 5-day reports submitted to the authorizing judge. The government also underscores the fact that interception did not occur on a 24-hour, 7-day-a-week basis since interception over several telephones was voluntarily discontinued before expiration of the full 20-day periods authorized under the October 5, 1973, and the November 6, 1973 orders of issuing Judge Collinson.

After examining the materials filed with respect to the minimization question, our conclusion is that the statutory

---

* Defendant Picone's motion to strike Agent Schucker's affidavit is overruled.

4. The monitoring agents participating in the interceptions were instructed prior to monitoring that they were to discontinue all interception of conversations determined to be unrelated to criminal activity, in other words, conversations of a purely personal nature, as well as legally privileged conversations of Frank Tousa, then under federal indictment. In addition, the participating agents were required to read the court orders as well as the applications and supporting affidavits, all of which were thereafter posted in the monitoring room. Further, during the conduct of the interceptions, the agents were continually instructed as to the minimization requirement. (Schucker affidavit, at 2 and 3.)

requirement of § 2518(5) was met by the government's efforts in this case. We believe several factors support this conclusion.

■ First, it is apparent that the scope of the criminal enterprise under investigation was both far-reaching and ill-defined at its inception. Indeed, the very purpose for seeking prior judicial approval to conduct the surveillance used in this case was to determine the scope of the gambling enterprise, and to determine the various actors involved in it. In addition, the orders authorizing the interception of oral and wire communications expressly provided that such interception was not to cease when gambling-related conversations were overheard, but were instead to continue until the manner in which the named persons and the unknown participants engaged in gambling was revealed. Since the government was using wiretap surveillance to investigate a large-scale alleged conspiracy with several participants, some of whom were unknown, it cannot be held to have failed to minimize its intercept activity simply because it may have intercepted some conversations of a personal nature.

■ Second, we consider the location and operation of the subject telephones. Although the tapping of a residential telephone is involved in defendant Picone's case, and it is apparent that some conversations of a personal nature were intercepted, we do not believe that this may be equated with an absence of minimization. Although there is an expectation of privacy with respect to such a telephone, it is equally true that electronic surveillance, by its very nature, cannot be conducted without some interception of conversations, which, through the benefit of hindsight, appear innocent. The proper focus is on the reasonableness of the agents' conduct at the time of the intercepts, given the extent of their knowledge of the case and of the activities of the suspects. The agents' conduct must also be measured against the possibility that seemingly innocuous conversations may be coded and

that a conversation which appears innocent at first may later turn to a discussion of criminal activity. *United States v. Armocida*, 515 F.2d 29 (3rd Cir. 1975) at 53. We thus reject defendant Simone's contention that since interception of a business phone occurred in his case, and that some innocent conversations were seized, no minimization occurred. Viewed from the perspective of what was known at the time judicial approval for wiretapping was sought, and in light of both the objectives of the wiretap, and in light of the considerations in *Armocida* above, we cannot say that simply because some innocent conversations were intercepted that there was no minimization in the conduct of the wiretaps.

Third, we consider the government's expectation of the content of the calls. The nature of the ill-defined gambling conspiracy that the government was attempting to investigate is important in this determination. The affidavits filed in connection with the request to wiretap reveal that although prior investigation had disclosed that the government had some knowledge concerning the gambling network, and knew of some of its participants, it did not possess sufficient concrete information so that it could limit in advance its interception solely to calls made by gambling participants or to gambling conversations. We think that the government did what it reasonably could in light of its knowledge both prior to the intercepts, and after they were commenced, in order to insure that interceptions of conversations not related to gambling were minimized.

■ Fourth, we consider the degree of judicial supervision by the authorizing judge over the conduct of the wiretap surveillance. Here, the safeguarding requirement in 18 U.S.C. § 2518(6) was utilized by the authorizing judge since he required the government to prepare and submit reports at five-day intervals describing the conduct of and results reached from the wiretaps. When a judge requires such reports at regular intervals, reviews the progress as it is related to him, and closely supervises the

interception, the rights of affected individuals are most likely to be safeguarded. *United States v. James,* 161 U.S. App.D.C. 88, 494 F.2d 1007 (1974) at 1021. The presence of the reporting requirement imposed upon the government in this case supports our overall conclusion that there was no failure of the government to minimize the interception of conversations not otherwise subject to interception. 18 U.S.C. § 2518(5).

We next consider the question of whether the government had probable cause to name the defendant Simone in the October wiretap application. The basis for this argument derives statutorily from 18 U.S.C. § 2518(1)(b)(iv), which requires that the application for interception of wire or oral communication must specify the "identity of the person, *if known,* committing the offense and whose communications are to be intercepted." (Emphasis is supplied.) It is argued on behalf of defendant Simone that probable cause did in fact exist for naming him in the October wiretap application, and therefore also in the order, and further, that failure to name him requires suppression of the wiretap evidence as to him. *See* 18 U.S.C. §§ 2518(1)(b)(iv) and 2515. Defendant Simone additionally relies upon *United States v. Bernstein,* 509 F.2d 996 (4th Cir. 1975), *petition for cert. filed,* 421 U.S. 962, 95 S.Ct. 1948, 44 L.Ed.2d 448 (1975), for the proposition that omission from a wiretap application of the name of a known offender whose communications are to be intercepted requires suppression of his conversations.

■ *Bernstein* requires identification of an individual in the wiretap application when the applicant has probable cause to believe both that the individual is committing the offense and that his communications are to be intercepted. 509 F.2d at 1001. Our review of the facts known to the government prior to applying for the October 5th wiretap approval convinces us that there was probable cause with respect to both parts of this dual test.

The critical documents establishing probable cause are: (1) Special Agent Schucker's affidavit filed in support of the October 5th application, and (2) Schucker's affidavit filed April 21, 1975 in connection with this case. The first of these affidavits reveals that two telephones located within the Necco Tea and Coffee Company and numbered 231–1684 and 231–1721 were being used to disseminate gambling information by the defendant Picone, who, among others, was named in the application for the October 5th order. In August of 1973, an informant visited Necco and observed Picone, Abbott, and Moretina, who were all named in the October application, engage in booking bets by using the two Necco phones listed above. In addition, the same informant, who was stated to be reliable by the government in its application, advised a government agent that the Necco location appeared to be "a daily congregating point for a number of individuals engaged in bookmaking activities." (p. 8 of 1st affidavit.) Further, an additional informant, also alleged to be reliable, advised Schucker that the informant placed wagers directly with the defendant Picone by calling him at 231–1684, a number listed to Necco. (p. 16 of 1st affidavit.)

Physical surveillance by Federal Bureau of Investigation agents revealed that defendant Simone was seen at Necco in the company of several persons named in the application for the October 5th order. (p. 20 of 1st affidavit.) Simone, for example, was seen "meeting together" with Picone and others at Necco on August 10, 1973. Simone was also seen with persons named in the wiretap order at Necco on August 29, 1973, September 8, 1973, and on September 13, 1973. (p. 20 of 1st affidavit.)

These facts are important when considered in light of an additional fact that was within the government's knowledge prior to seeking approval for the October 5th order. Based upon the April 21, 1975 affidavit of Schucker, it is clear that the government knew that defendant Simone was the President of the

Necco Tea and Coffee Company, and further knew that he would be regularly present at Necco, the premises where the telephones were located. Defendant Simone, however, was not directly observed either by informants or government agents as actually using the phones at Necco.

This latter fact is of no moment when considered in light of the other information the government possessed. The government knew that the Necco location was being used to disseminate gambling information, that the phones at Necco were being used to make bets, and that the defendant Simone was the President of Necco and that he was regularly present on the premises. Under these circumstances, it is our view that there was ample probable cause for the government to believe that Simone was committing gambling offenses, and that his communications would likely be intercepted over the Necco phones. It follows that Simone's motion to suppress the conversations seized under the October 5th order must be granted. *United States v. Bernstein, cited supra,* and *United States v. Donovan,* 513 F.2d 337 (6th Cir. 1975), *petition for cert. docketed, see* 17 Cr.L. 4151; *see also United States v. Moore,* 168 U.S.App.D.C. 227, 513 F.2d 485 (1975) at 497. *Contra, United States v. Doolittle,* 507 F.2d 1368 (5th Cir. 1975), *rehearing en banc granted, and decision affirmed,* 518 F.2d 500 (1975).

An additional question raised is the effect of granting this motion to suppress on the communications intercepted under authority of the second order of November 1973. Simone argues that *United States v. Wac,*[5] 498 F.2d 1227 (6th Cir. 1974), governs this issue,

and we agree. The question presented, then, is whether the evidence seized under the October order was factually essential to the naming of Simone in the application for, and in the second order in November. We believe that it was essential. At the June 5th hearing, Agent Schucker testified that Simone was named in the November application because of conversations intercepted under the October order. (Transcript at pp. 160–161.) In addition, government counsel indicated that the same was true during the April 8 hearing. (Transcript at 61.) We therefore hold that no evidence derived from the second wiretap order may be introduced against defendant Simone.

A related question concerns the legal effect of the suppression of the evidence as to the defendant Goodfellow on the remaining defendant Picone. The government contends that all intercepted conversations including Goodfellow, or in which he was a participant, can be used at trial against defendant Picone. As we view this question, a threshold issue is whether Picone has standing to object to evidentiary use of conversations which were illegal as to defendant Goodfellow.

Picone argues that under 18 U.S.C. § 2518(10)(a), he possesses the requisite standing to object to all conversations (and evidence derived therefrom) between himself and Goodfellow. He thus asserts that he is an "aggrieved person" within the meaning of § 2518(10)(a). To further develop the standing thesis, Picone contends that he is an aggrieved person as defined in 18 U.S.C. § 2510(11), since he was both a *party* to intercepted conversations with defendant Goodfellow, and was a person *against whom* the interception was di-

---

5. In *Wac,* motions to suppress evidence derived from two wiretaps were sustained where the results obtained under the first order were factually essential to granting of the second wiretap order. Evidence deriving from the first order was suppressed because neither the Attorney General nor his specially designated assistant had approved the application. Since the affidavit filed to support the second appli-

cation contained transcripts of conversations overheard under the first order, evidence derived from conversations intercepted under the second order was suppressed. The connection between the two orders had not become so attenuated as to dissipate the taint derived from the first order. See *Wong Sun, et al. v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

rected. There can be no question about Picone's standing as a person against whom the interception was directed since it is undisputed that he was named in both the October and November interception orders.

The remaining question is whether the admitted illegality of the interception of the Goodfellow conversations taints as well the interception of Picone's conversations with Goodfellow. Contrary to the government's contention, we do not believe that *United States v. Kahn*, 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974), *United States v. Donovan*, 513 F.2d 337 (6th Cir. 1975), or *United States v. Doolittle*, 507 F.2d 1368 (5th Cir. 1975) directly answer this question since it was not squarely presented in those decisions. The government also argues that *United States v. Bernstein*, 509 F.2d 996 (4th Cir. 1975) controls disposition of this issue in its favor. We disagree for reasons which we set out below.

■ Our own research has disclosed two cases bearing on this matter in addition to the *Bernstein* decision. In *United States v. Moore*, 168 U.S.App.D.C. 227, 513 F.2d 485 (1975), the court reserved decision on the question since the argument was not raised. See footnote 33, 513 F.2d at 497. However, in *United States v. Bellosi*, 163 U.S.App.D.C. 273, 501 F.2d 833 (1974), the court ruled that all persons whose conversations were intercepted under a wiretap authorized on the basis of an application which failed to disclose that one of the persons under investigation had previously been the subject of a wiretap had standing to seek suppression of the intercepted communications. Although *Bellosi* involved a failure to disclose existence of a prior

wiretap, and not failure to name a known person in the wiretap application as is involved here, we believe that the principle is the same in both cases, since the broad issue is compliance with the stringent requirements of the wiretap statute. At bottom, there can be no cogent analytic distinction between a violation of 18 U.S.C. § 2518(1)(e), which was involved in *Bellosi*, and a violation of the naming requirement in 18 U.S.C. § 2518(1)(b)(iv), which occurred here. The reason is that a violation of either is a violation of a statutory requirement that is a "material" one, since both statutory requirements have been held to be "preconditions to obtaining . . . intercept authority" within the meaning of *United States v. Giordano*, 416 U.S. 505 at 515, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). *Bellosi* has held the § 2518(1)(e) requirement to be within this category, and *Bernstein* has held the § 2518(1)(b)(iv) naming requirement to be within this category as well. See *Bellosi*, 501 F.2d at 841, and *Bernstein*, 509 F.2d at 1001. The result that must follow from a violation of a statutory requirement that is material in the *Giordano* sense, then, is suppression of the contents of the intercepted communication, and evidence derived therefrom, since the communication was unlawfully intercepted. 18 U.S.C. §§ 2518(10)(a)(i), 2515. Accordingly, we hold that the effect of granting the motion to suppress with respect to defendant Goodfellow requires that the motion to suppress the communications between Goodfellow and Picone, and the evidence derived therefrom, also be sustained.[6]

In view of the government's statement in their brief that the conversations be-

---

**6.** Although it has not been definitively settled whether the naming requirement is of constitutional magnitude [see *United States v. Kahn*, 415 U.S. 143, 155 n. 15, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974)], *Bernstein* indicates that both constitutional and statutory requirements are fostered when a known offender whose conversations are to be intercepted is named in the wiretap application. If naming is constitutionally required, then the result we reach with respect to Picone's motion to suppress is

required under the fruit of the poisonous tree doctrine as well as by statute. See *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). This doctrine has received recent attention by the United States Supreme Court in *Brown v. State of Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The *Brown* opinion underscores the continuing viability of the doctrine which was expounded in *Wong Sun*.

tween defendant Goodfellow and defendant Picone are expected to be "a substantial portion of the government's evidence at trial," we believe that as a result of our sustaining Picone's motion to suppress, determination of the remaining questions may well be moot. In order to avoid needless expenditure of scarce judicial time, the court directs the following procedure be utilized. First, the government will be given ten (10) days from the date of this Order within which to advise the court by letter whether, in its opinion, sufficient evidence exists independently of that suppressed herein to proceed to trial against the defendant Picone. Second, if the government intends to proceed to trial, determination of the remaining issues will then be made by the court as expeditiously as possible.

It is so ordered.