UNITED STATES of America,
Appellant,

v.

Calman BERNSTEIN, Appellee.

No. 74–1066.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 30, 1974.

Decided Jan. 24, 1975.

Marc Philip Richman, Atty., U. S. Dept. of Justice (George Beall, U. S. Atty. for the District of Maryland, David E. Holt, Jr., Sp. Atty. and Peter M. Shannon, Jr., Atty., Dept. of Justice, on brief), for appellant.

Arnold M. Weiner, Baltimore, Md. (M. Albert Figinski, Baltimore, Md., on brief), for appellee.

Before CRAVEN, BUTZNER and FIELD, Circuit Judges.

BUTZNER, Circuit Judge:

The United States appeals from a district court order that suppressed Calman Bernstein's intercepted phone calls as evidence against him. The court found that when the government applied for the intercept order extensions, under which the conversations were later seized, its agents knew that Bernstein was committing the crime under investigation and would use the telephone they sought to tap. Because Bernstein was not identified in either the applications or the extensions, in violation of Title III of the Omnibus Crime Control and Safe Streets Act, the court suppressed the conversations. Its opinions are reported as United States v. Curreri, 368 F.Supp. 757 (D.Md.1973), and United States v. Bleau, 363 F.Supp. 438 (D.Md.1973).

The wiretaps were part of an investigation of numbers bookmaking. The first intercept order was obtained on March 30, 1972, and extensions were granted on April 14, May 1, and May 17. After Bernstein and others were indicted for conducting an illegal gambling business, he moved to suppress conversations seized under both the original order and the extensions. The district court found that although government agents had probable cause to believe that Bernstein was involved in the business before they applied for the March 30 order, they did not know that he would use the tapped telephones. Consequently, it denied Bernstein's motion to suppress the conversations obtained by the first interception. Bernstein has not appealed this order.

The court then found that before the agents applied for the April 14 extension order, information from the first interception had given them probable cause to believe that Bernstein would be overheard on a tapped telephone. Their failure to identify him in that and subsequent applications, it held, rendered the interceptions obtained after April 14 unlawful with respect to him. Accordingly, the court suppressed them. We affirm.

## I

The application for a wiretap order must include "a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including . . . the identity of the person, if known, committing the offense and whose communications are to be intercepted."[1] Extensions of an intercept order require a new application containing the same information needed for the original one.[2] The order must specify "the identity of the person, if known, whose communications are to be intercepted."[3] Since it is only through the application that the judge learns the identity of the person whose conversations are to be intercepted, the identification requirement for the order is no broader than for the application. United States v. Kahn, 415 U.S. 143, 152, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974). The critical issue in this case, therefore, is whether the omission from a wiretap application of the name of a known offender whose communications are to be overheard dictates suppressing his conversations as unlawfully intercepted when the government proposes to use them against him.[4]

---

1. 18 U.S.C. § 2518 provides:

"(1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

. . . . .

(b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted . . . ."

2. 18 U.S.C. § 2518(5) provides in pertinent part:

" . . . Extensions of an order may be granted, but only upon application for an extension made in accordance with subsection (1) of this section . . . ."

3. 18 U.S.C. § 2518(4)(a).

4. 18 U.S.C. § 2518(10)(a) provides:

"Any aggrieved person in any trial . . . in or before any court . . . of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted;

. . . . .

If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter."

18 U.S.C. § 2515 provides:

■■ Not every violation of Title III results in an unlawful interception. A violation is material only if Congress intended the statutory provision that was not followed to be "a precondition to obtaining . . . intercept authority." United States v. Giordano, 416 U.S. 505, 515, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 (1974).[5] Statutory preconditions, teaches the Court, "directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." 416 U.S. at 527, 94 S.Ct. at 1826. In contrast, violation of a statutory provision that does not "affect the fulfillment of any of the reviewing or approval functions required by Congress," does not render an interception unlawful within the meaning of § 2518(10)(a)(i). United States v. Chavez, 416 U.S. 562, 575, 94 S.Ct. 1849, 1856, 40 L.Ed.2d 380 (1974).[6] Whether a statutory provision is a precondition to a valid order depends, then, on its role in the Act's system of restraints on electronic surveillance.

Title III was drafted to protect the privacy of wire and oral communications while allowing the use of electronic surveillance in the investigation of certain crimes. It restricts eavesdropping by law enforcement officers both to conform to the fourth amendment and to prevent abuse even of constitutional surveillance.

The government contends that the identification requirement serves neither end and that its violation is a mere technical omission. But when the entire statute is considered, identification is seen to facilitate both constitutional and congressional limits on eavesdropping.

■ Electronic interception of communications is a form of search and seizure subject to the fourth amendment. Unless a party to the conversation consents, the amendment only permits interceptions with prior judicial approval to gather information about a specific crime for a limited time from a particular place. Therefore, the amendment prohibits eavesdropping to collect general intelligence about individuals. See generally United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). Several provisions of Title III directly implement these restrictions.[7] Though dictum in United States v. Kahn, 415 U.S. 143, 155 n.15, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974), indicates that the fourth amendment might not require naming a known offender whose conversations are to be intercepted,[8] identification nevertheless fosters conformity with both constitutional and statutory requirements. In particular, it is important to the exercise of (A) execu-

"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received . . . in any trial . . . if the disclosure of that information would be in violation of this chapter."
18 U.S.C. § 2517(3) allows intercepted communications to be used as evidence only if obtained "by any means authorized by this chapter."

5. In *Giordano* the Court affirmed suppression because the Attorney General or a designated Assistant Attorney General failed to review and approve the application for an intercept order, in violation of 18 U.S.C. § 2516(1).

6. *Chavez* held that application's misnomer of the authorizing Assistant Attorney General, in

violation of 18 U.S.C. § 2518(1)(a), did not require suppression.

7. *E. g.,* 18 U.S.C. §§ 2518(3) (judicial finding of probable cause that evidence of specific crime can be gathered from specific place), and 2518(5) (limitations on time and scope).

8. *But see* West v. Cabell, 153 U.S. 78, 14 S.Ct. 752, 38 L.Ed. 643 (1894). This case, cited in the legislative history of § 2518(4)(a), S.Rep. 1097, 90th Cong., 2d Sess., 1968 U.S. Code Cong. and Admin.News, p. 2191, held that both the common law and the fourth amendment required that the person to be seized under an *arrest* warrant should be accurately named. Since the other information demanded in § 2518(1)(b) is required by the fourth amendment, Congress may have believed that identification of the person speaking is also constitutionally required.

tive approval, (B) prior judicial authorization, and (C) subsequent judicial review of interceptions.

## A

In order to allow only necessary electronic surveillance, Congress imposed preconditions not required by the Constitution, including restriction of federal authority to request intercept orders to the Attorney General or a designated Assistant Attorney General. 18 U.S.C. § 2516(1); United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). When deciding whether to approve surveillance, however, the Attorney General depends on information from law enforcement officials. If his subordinates do not identify known persons whose conversations they wish to intercept, they effectively substitute their judgment for his. It is therefore apparent that identification, as required by § 2518(1)(b)(iv), is essential to the discharge of responsibility which the Act places on the Attorney General or his designate.[9]

## B

Both the fourth amendment and Title III require prior judicial authorization of electronic eavesdropping in order to forestall abuses by enforcement officials. 18 U.S.C. §§ 2511, 2518(3); United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Issuing an intercept order is not simply a ministerial act, for the judge must decide that the constitutional and statutory justifications for the intrusion exist. So that the

judge can be as informed as possible in an *ex parte* hearing, Congress required the applicant for an intercept order to furnish the necessary facts in considerable detail. See 18 U.S.C. § 2518(1); *cf.* Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

Included in the information the government must furnish is a complete history of the electronic surveillance of the persons named in the application.[10] Omission of this information is a statutory violation that invalidates any interceptions with respect to the persons not listed. United States v. Bellosi, 501 F.2d 833 (D.C.Cir. 1974). As that case explains, Congress believed that information about prior surveillance is "necessary to judicial consideration of whether the proposed intrusion on privacy is justified by important crime control needs." 501 F.2d at 837. But a history of prior taps involving the same person is available to the court only when he is named in the application. Identification required by the Act, therefore, facilitates judicial control by providing the complete history that Congress deemed necessary for an informed decision.

## C

In Berger v. New York, 388 U.S. 41, 60, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), the Supreme Court held that notice of a search is an essential element of judicial control over the execution of intercept orders. Secrecy, it reasoned, could make vindication of fourth amendment rights impossible, especially when the government did not intend to use the intercepted conversations as evidence. Conform-

---

**9.** The fact that an application for an extension is involved in this case is not significant. The Acting Attorney General separately authorized the April 14th extension and, on the recommendation of an Assistant Attorney General, approved the addition of names not included in the original application. Bernstein's name, however, was not mentioned.

**10.** 18 U.S.C. § 2518(1)(e) requires:

"A full and complete statement of the facts concerning all previous applications known to

the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application . . . . ."

ing to the Constitution, Title III requires service of notice on "the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine," informing them that an interception was applied for and either denied or carried out. 18 U.S.C. § 2518(8)(d). This notice, the legislative history explains, "should insure the community that the techniques are reasonably employed. Through its operation all authorized interceptions must eventually become known *at least to the subject.* He can then seek appropriate civil redress . . . if he feels that his privacy has been unlawfully invaded." [Italics added.] S.Rep. 1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. and Admin.News, p. 2194.[11]

Unless the government uses the intercepts as evidence against him, an unnamed subject has no assurance that he will receive notice, and the government may secretly circulate unlawfully intercepted conversations to other law enforcement agencies and use them in its own operations.[12] Post-interception judicial review in an adversary hearing, an essential part of Title III's remedial scheme, cannot be had without notice to the person overheard. When the government expects to listen to a known offender, it has the statutory duty to name him in the application so that he will receive the notice to which he is entitled. Failure to do so can obstruct judicial review of the government's actions and thwart the congressional policy of protecting the individual's privacy.

■ In conclusion, the Act's identification requirements form an integral part of the system Congress created to protect privacy by executive and judicial control of electronic surveillance. Identification of known persons, as required by § 2518(1)(b)(iv), is therefore a statutory precondition to a valid intercept or-

der, and failure to identify renders an interception contrary to law and invalid as to that person. 18 U.S.C. §§ 2518(10)(a)(i), 2515; *cf.* United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974).

II

We next consider whether Bernstein was "known" within the meaning of § 2518(1)(b)(iv), which requires the application for an intercept order to include "the identity of the person, if known, committing the offense and whose communications are to be intercepted." The problem consists of three parts: what information does the statute require; how certain must the applicant be about this information; and whether the district court correctly assessed the applicants' knowledge when they applied for the April 14th extension.

■ We agree with the district court that § 2518(1)(b)(iv) imposes no duty of identification until the applicant knows both that the individual "is committing the offense" and that his "communications are to be intercepted." The Supreme Court settled the first point in United States v. Kahn, 415 U.S. 143, 156–157, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974). Its opinion supports the second by implication, for if the government has no knowledge that a certain person will be overheard on the tapped phone, it cannot intend to invade his privacy and would serve no statutory purpose by identifying him. *See* United States v. Martinez, 498 F.2d 464, 468 (6th Cir. 1974).

How positive of the relevant facts must the government's agents be? The government maintains that it must name the person only when its knowledge approaches certainty. Bernstein contends that the government must identify the

---

11. 18 U.S.C. § 2520 provides a civil remedy for violations of Title III.

12. If the intercepts are used as evidence, the government must give notice at least ten days before trial. 18 U.S.C. § 2518(9).

subject of an interception when its knowledge supports a finding of probable cause of his criminal activities and use of the phone to be tapped.

Again, *Kahn* provides guidance by indicating that probable cause is sufficient knowledge.[13] The Court's observation, though dictum, is consistent with the historical use of this test to evaluate other invasions of privacy. *See, e. g.,* Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). The probable cause standard is a well tried compromise between the interests of personal privacy and effective law enforcement. *See* Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Examination of the evidence by a neutral, objective judicial officer provides a more uniform and certain measure of the investigator's knowledge than his own subjective judgment. *See* Johnson v. United States, 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). We therefore hold that when there is probable cause to believe that an individual is committing a specific crime and may be overheard on a specific phone, he is known to the government for the purpose of § 2518(1)(b)(iv).

We next consider whether the district court correctly found that the F.B.I. had probable cause to believe Bernstein was participating in the activity under investigation and would use a phone covered by the extension of the intercept order. Since the district judge's opinion sets forth the facts in meticulous detail, only a brief résumé of the evidence is necessary for our pur-

poses. *See* United States v. Curreri, 368 F.Supp. 757, 761 (D.Md.1973).

Before the government applied for its initial intercept order on March 30, F.B.I. agents investigating Robert Curreri, a bookmaker whose telephones they wished to tap, learned from two informants of proven reliability that Bernstein was handling Curreri's layoff.[14] Baltimore police also told agents that Bernstein was reputedly involved in gambling. It is apparent the district court correctly found that from this information the agents had probable cause to believe Bernstein was part of an illegal gambling business. Indeed, the government now concedes this point.[15] But not until Curreri's phones were actually tapped did the F.B.I. learn that Bernstein would use one of them to discuss gambling with Curreri. On April 11, 1972, agents monitored a call on one of Curreri's phones from a man whom they were able to identify as Bernstein. Initially, an unidentified man told Bernstein that Curreri was busy. When Bernstein gave his name and said that he had a message to call, he was told to hold on because Curreri wanted to speak to him. Curreri and Bernstein then discussed a payoff on a wrong number the previous day and ways to avoid the same mistake in the future. During the conversation Bernstein said that he had told his girl to "call everybody" when he had learned of the mistake and that he had called Curreri's mother once before about a similar problem. Curreri then instructed Bernstein to give his girl Curreri's number, saying, "I'm either here or home or someplace." Bernstein reassured Curreri that anytime a wrong number was reported, "If it's four

---

13. In United States v. Kahn, 415 U.S. 143, 155, 94 S.Ct. 977, 978 (1974), the Court stated that:

> "Title III requires the naming of a person in the application or interception order only when the law enforcement authorities have probable cause to believe that that the individual is 'committing the offense' for which the wiretap is sought."

14. A bookmaker must diminish his risks by re-betting, or "laying off," large bets with another bookmaker. The person who takes layoff bets is an integral part of a bookmaking business. United States v. Bobo, 477 F.2d 974, 990 (4th Cir. 1973).

15. "There is no question but that the government had probable cause to believe that Bernstein was a member of Curreri's gambling operation . . . " Reply Brief for the United States 5.

o'clock in the morning, I'll call." The transcript ends with Bernstein saying, "I'll talk to you later," and Curreri responding, "O.K., Cal." The government mentioned neither Bernstein nor this call in its April 14th application.

Taken as a whole, the evidence supports the district court's finding. F.B.I. agents already had probable cause to believe Bernstein was involved in Curreri's operation. The April 11th conversation, which referred to payments between the two men, confirmed this and also showed that Bernstein phoned Curreri. A detached observer could conclude from the evidence available before April 14 that the government had probable cause to believe that Bernstein was still handling Curreri's layoff and on occasion would talk with him about the business on a tapped phone. *Cf.* United States v. Kleve, 465 F.2d 187, 193 (8th Cir. 1972).

### III

The government contends that even if it violated § 2518(1)(b)(iv) with respect to Bernstein, § 2517(3) authorizes the use of the taps as evidence against him.[16] Briefly, the government argues that the communications between Bernstein and Curreri include both sides of the conversation; that a valid order covered Curreri; and that once lawfully intercepted, Bernstein's conversations could be used against anyone, including Bernstein himself.

The fundamental error in the government's position is the assumption that Title III provides only a right not to

have the unlawful intercepts used in court. But Title III does more: it creates a right not to be overheard except in conformity with its provisions. 18 U.S.C. § 2511(1).[17] As we held in part I of this opinion, the identification required by § 2518(1)(b)(iv) is a precondition to lawful interception with respect to a known person. Therefore, contrary to the government's assertion, § 2517(3) supplies no basis for admission since by its terms it applies only to "communications intercepted in accordance with this chapter."

The government compares this case, however, to one where an independent ground for a search, such as a valid arrest, renders a defective warrant, or the absence of a warrant, immaterial. We find the analogy unpersuasive. A warrantless search incident to a lawful arrest is valid because the occasion requires the contemporaneous removal of weapons or disposable evidence from the prisoner and the area under his immediate control. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Similar exigent circumstances are lacking when agents tap a phone with probable cause to believe that they will overhear a particular person talking about specific criminal activity.

Nor can the government rely on a comparison to the plain view doctrine. The seizure of evidence in plain view is justified only when discovery is inadvertent. Coolidge v. New Hampshire, 403 U.S. 443, 469, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The government's position finds no support in United States v. Kahn, 415 U.S. 143, 94 S.Ct. 977, 39

---

**16.** 18 U.S.C. § 2517(3) provides:

"Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any criminal proceeding in any court of the United States or of any State or in any Federal or State grand jury proceeding."

**17.** 18 U.S.C. § 2511(1) provides in pertinent part:

"(1) Except as otherwise specifically provided in this chapter any person who—
(a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication . . . ."
shall be subject to criminal penalties.

L.Ed.2d 225 (1974). Mrs. Kahn's conversations were lawfully intercepted because the government had no reason to suspect her criminal activities when the agents overheard her. Here, in contrast, the agents had reason to anticipate Bernstein's use of a tapped phone to discuss his participation in the crime they were investigating, and they intended to intercept his calls. The conversations suppressed by the district court were not inadvertently discovered.

We conclude, therefore, that when the government has the statutory duty to identify an individual, its failure to do so is not excused by the fact that it lawfully eavesdropped on another party to the conversation.

### IV

Bernstein did not receive statutory notice of the wiretaps in which his conversations were intercepted. The government argues that because he later received actual notice he was not prejudiced, and consequently his conversations are admissible.

■ Suppression, however, does not depend on proof of prejudice from lack of statutory notice. Congress defined an aggrieved person as "a party to any intercepted wire or oral communication or a person against whom the interception was directed."[18] Prejudice is not an element of the definition. Furthermore, the statute gives the district court no discretion to deny, because of lack of prejudice, an aggrieved person's motion to suppress when the interception is unlawful.[19] We conclude from the unequivocal language of Title III that Congress intended any unlawful invasion of an aggrieved person's privacy to be sufficient harm in itself to require suppression. *Cf.* United States v. Giordano, 416 U.S. 505, 524–529, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974).

The order of the district court is affirmed.

**18.** 18 U.S.C. § 2510(11).