UNITED STATES of America

v.

Ernest Leon FRIZZELL and Billy Ray Lee et al.

Cr. No. 1–75–12.

United States District Court,
E. D. Tennessee, S. D.

July 1, 1975.

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., Hugh Moore, Asst. U. S. Atty., Chattanooga, Tenn., for plaintiff.

Don Poole, Chattanooga, Tenn., for Marchman.

LeRoy Phillips, Jr., Chattanooga, Tenn., for Wells.

Arvin Reingold, Chattanooga, Tenn., for Frizzells.

Herbert Bacon, Morristown, Tenn., for Lee.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Billy Ray Lee, along with five other persons, is charged in a one-count indictment with unlawfully, willfully and knowingly conducting an illegal gam-

bling business involving sports bookmaking, in violation of the laws of Tennessee, and that the said gambling business involved five or more persons who conducted, financed, managed, supervised, directed, and owned all or a part of said gambling business which had a gross of $2,000.00 or more in a single day, in violation of Title 18 U.S.C. § 2 and § 1955.[1] Section 2 is the aiding and abetting statute.

Lee has filed two motions to suppress all communications that were intercepted by the Federal Bureau of Investigation pursuant to an order issued by Judge Wilson on October 30, 1974, on the grounds that said communications were intercepted in violation of Title 18 U.S.C. § 2518(1)(b)(iv)[2] and § 2518(4)(a)[3] and the Fourth and Fifth Amendments to the Constitution of the United States. Movant contends that the order of authorization under which the message was intercepted was insufficient on its face and that the defendant was not served with an inventory complying with Section 2518(8)(d)[4] within ninety days as required by said Section.

Defendant contends that the Government on the day that it sought the order of interception knew that defendant Lee was one of the persons committing the offense charged in the indictment and that under § 2518(1)(b)(iv) it was required to specifically name him in the application for interception. The basis for this contention is found in the affidavit of W. John Benton, Special Agent of the Federal Bureau of Investigation, which supported the application for the interception. Under paragraph 18 of the affidiavit, it is stated that a source had furnished information to Benton that Lee was a known bookmaker who operates The Sportsman, 223 West Main Street, Morristown, Tennessee; that the source stated Lee's telephone listing in Knoxville is used by bettors and bookmakers to obtain line information and to make wagers on sports events with Lee. The source stated that he had obtained line information on sporting events by calling No. 615–522–3741, which was Lee's phone number. In paragraph 19 of the affidavit, it is stated that on September 12, 1975

1. "Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both."

2. "(1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:
  "(b) . . . (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted; . . ."

3. "(4) Each order authorizing or approving the interception of any wire or oral communication shall specify—
  "(a) the identity of the person, if known, whose communications are to be intercepted; . . ."

4. "(d) Within a reasonable time but not later than ninety days after the filing of an application for an order of approval under section 2518(7)(b) which is denied or the termi-

nation of the period of an order or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice of—
  "(1) the fact of the entry of the order or the application;
  "(2) the date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and
  "(3) the fact that during the period wire or oral communications were or were not intercepted.

The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice. On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed."

Special Agent Moody of the Federal Bureau of Investigation advised affiant that on September 12, 1974 Lee advised the Special Agent that he owns and operates the Sportsman, 223 West Main Street, Morristown, Tennessee, Telephone No. 615–586–6881. That Lee admitted being a bookmaker, accepting wagers on sports events and operating from Telephone No. 615–586–6881. Lee also admitted furnishing daily line information on sports events to bettors and other bookmakers in Tennessee when telephonic request is made through telephone number 615–586–6881. In paragraph 21 it is stated that on September 17, 1974 and October 17, 1974 a review of South Central Bell Telephone Company records, Chattanooga, Tennessee, obtained through grand jury subpoena reveals that Chattanooga telephone numbers 615–886–4404, 615–886–4405 and 615–886–4406 are rotary numbers, that is, a main line with two more additional lines strapped to this line. When a telephone call is received on 886–4404 and this number is busy, the rotary equipment will automatically advance the call to 886–4405, and if 886–4405 is busy, the equipment will advance the call to 886–4406. This telephone was installed April 18, 1972, at Box 588, River Canyon Road, Chattanooga, Tennessee, 37405, subscribed to by J. C. McKinney. A review of the telephone company records reveal almost daily calls to Knoxville, Tennessee, telephone number 615–522–3741, and calls to Morristown telephone number 586–6881 from February 5, 1974 to October 4, 1974.

Defendant relies upon the recent case of *United States v. Thomas W. Donovan*, 513 F.2d 337 (6th Cir. 1975). One of the issues in that case was whether the Government knew or had reason to believe that defendants, Donovan, Robbins and Buzzacco, were known to the Government, within the meaning of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20, and that failure to include their names in the applications and or-

ders necessitated the suppression of the contents of the intercepted communications and the evidence derived therefrom. The trial court found that the Government had such knowledge and suppressed the evidence.

The second issue was whether Merlo and Lauer were served with notices of inventory and whether failure to serve them required a suppression of the evidence obtained by the interception. The trial court again held that Merlo and Lauer were not served and that the interest of justice required that the evidence as to them be suppressed. The Court pointed out that Title III requires that when the Government applies for a wire tap authorization "the identity of the person, if known, committing the offense and whose communications are to be intercepted" must be disclosed specifically. 18 U.S.C. § 2518(1)(b) (iv). The Court concluded that there could be no doubt on the record that Donovan and Robbins were known. The Government contended that Buzzacco was not known but the Court held that his name, along with Donovan and Robbins, should have been disclosed to the district judge. The court pointed out that the meaning of the term "known" in 18 U.S.C. § 2518(1)(b)(iv) was defined by the Supreme Court in the case of *United States v. Kahn*, 415 U.S. 143, 155, 94 S.Ct. 977, 984, 39 L.Ed.2d 225 (1974), as follows:

> " . . . that Title III requires the naming of a person in the application or interception order only when the law enforcement authorities have probable cause to believe that that individual is 'committing the offense' for which the wiretap is sought . . . "

The District Court found:

> "Special Agent Ault, through a a check of Ohio Bell Telephone Company records and execution of physical surveillances, became aware of defendant Buzzacco's identity and address in Niles, Ohio, subsequent to the first set of authorized wire inter-

ceptions. Agent Ault further testified that he was aware of Buzzacco's activity and believed he was involved in gambling activities prior to submission of the Affidavit on December 26, 1972."

During a ten week period in June and July, 1972, ninety-one telephone calls placed by prime suspects in the case were traced to a Youngstown, Ohio telephone number which was known to be listed under one of Buzzacco's aliases. The FBI knew from previous investigations that Buzzacco had a reputation for being a bookmaker. He moved his place of operation to Niles, Ohio in the summer of 1972. The record was not conclusive as to the date that physical surveillance placed Buzzacco at the Niles address, although it may have been as late as December, 1972. Prior to that time physical surveillance of that address had been conducted. Telephone calls placing lay-off bets were intercepted between the other suspects and a person at the Niles number variously identified as "Buzz" or "Buzzer." At the hearing on the motion to suppress, agent Ault, upon whose affidavit the wire tap orders were based, testified that he had "suspicions" that Buzzacco was involved in the gambling activities prior to the submission of the wiretap applications.

The court concluded that these facts were adequate to demonstrate "a probability of criminal conduct." *Coury v. United States,* 426 F.2d 1354, 1356 (6th Cir. 1970). The trial court held that at the time the applications for wire taps were made the Government had probable cause to believe that Buzzacco was engaged in the illegal gambling activities for which the intercept authorization was sought and he should have been named in the application.

The Sixth Circuit was evidently of the opinion that the holding of the trial court was not clearly erroneous and therefore affirmed it.

The situation in the present case is different from that in the *Donovan* case. The information about Lee is

shown on paragraphs 18 and 19, page 13, of the Benton affidavit as follows:

"18. An eighth confidential source has provided reliable information since November, 1973. Source has furnished information which resulted in the arrest of five gamblers on local charges in East Tennessee. This source on September 30, 1974, advised that BILLY RAY LEE is a known bookmaker who operates The Sportsman, 223 West Main Street, Morristown, Tennessee. This source said BILLY RAY LEE has a telephone listing at Knoxville, Tennessee, telephone number 615–522–3751, which is used by bettors and bookmakers to obtain line information and to make wagers on sport events with BILLY RAY LEE. Source has personally obtained line information on sporting events by calling telephone number 615–522–3741. Information furnished by source has been corroborated through independent investigation conducted by Agents of the Federal Bureau of Investigation and through contacts with other sources.

"19. On September 12, 1974, Special Agent EDWARD H. MOODY, Federal Bureau of Investigation, advised affiant that on September 12, 1974, BILLY RAY LEE advised Special Agent Moody he owns and operates The Sportsman, 223 West Main Street, Morristown, Tennessee, telephone number 615–586–6881. LEE admitted being a bookmaker, accepting wagers on sports events, and operating from telephone number 615–586–6881. LEE admitted furnishing the daily "line" information on sports events to bettors and other bookmakers in East Tennessee when telephonic request is made through telephone number 615–586–6881."

The information furnished in the affidavit does not establish probable cause that Lee was violating the federal law as there was nothing to show that he was a member of an illegal gambling business (18 U.S.C. § 1955) or that

other federal statutes were violated. There was no information at the time of the application for the interception at the instance of federal authorities that Lee was connected with defendant Wells, Henley, Ernest Frizzell, Raymond Frizzell or Marchman. The mere fact that his telephone records show phone calls from Chattanooga telephones would not establish probable cause for a search warrant or an arrest warrant. The facts set forth in the *Donovan* case regarding Buzzacco are more specific than the facts relating to defendant Lee. For example, in the *Donovan* case, the FBI had set up a surveillance of Buzzacco's gambling operation and therefore had firsthand knowledge of it.

Two other known bookmakers were mentioned in the affidavit in support of the application. The bookmaker in Cleveland, Tennessee was known to have a telephone listing which telephone company records indicated had almost daily contact with the Chattanooga gambling operation. Neither of these bookmakers were named in the application.

The affidavit also indicated that Wells and Marchman were "partners" in the Chattanooga gambling operation, and that Henley and the Frizzells were employees. There was no information that Lee was connected with the operation to such a degree. *See United States v. Bernstein,* 509 F.2d 996 (4th Cir. 1975); *United States v. Doolittle,* 507 F.2d 1368 (5th Cir. 1975).

■ We come now to the second point raised by the defendant, namely that he was not served with an inventory within ninety days, as required by 18 U.S.C. § 2518(8)(d). The period of interception ended November 11, 1974. We are advised that the records in the United States Attorney's Office indicate that at 4:05 p. m., February 5, 1975, the inventory, addressed to Billy Ray Lee, Sportsman, Morristown, Tennessee 37814, was mailed at the Main Post Office, Chattanooga, Tennessee. The return-receipt attached to said inventory indicates that it was delivered in Mor-ristown to the above address on February 6, 1975 and that the defendant's uncle, an employee, signed for said mail matter. (A copy of said return receipt is attached as Exhibit 1). [Omitted from the opinion as published]. The date of service of February 6, 1975 was within the ninety-day period following the termination of the interception. It follows that defendant's contention that the Government failed to comply with 18 U.S.C. § 2518(8)(d) is without merit as the Government did not flout the statute. *See United States v. Chavez,* 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974). There was at least a "colorable conformity" with the inventory provisions of the statute.

In the *Donovan* case, no attempt was made by the Government to serve defendants Merlo and Lauer with an inventory. The application for the order authorizing the wire intercept consists of sixteen pages and appears to be more than adequate. It is sufficient to show probable cause of the commission of the offenses enumerated in 18 U.S.C. § 1955.

■ The second point raised by the defendant for the suppression of evidence is that the search warrant issued by the Magistrate was void in that it was based on evidence obtained from the wire taps in violation of 18 U.S.C. § 2518 and the Fourth and Fifth Amendments to the Federal Constitution and that Government agents conducted a general exploratory search and seized items that were not related to the warrant. Since the Court has held that the interceptions were legal, defendant's contention that the evidence must be suppressed on account of such interception must be denied. As to the exploratory search contention, the fact that the agent seized cigarettes and other items does not make the search invalid. There is no evidence that the search was exploratory. If, as contended by the defendant, certain items were seized that do not relate to the items described in the search

warrant, this would not make the search unlawful if it was otherwise reasonable. *United States v. Rabinowitz*, 339 U.S. 56, 63–64, 70 S.Ct. 430, 94 L.Ed. 653 (1950); *Harris v. United States*, 331 U. S. 145, 152, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). The contention that the warrant was void because it was issued upon illegally obtained evidence is without merit, as previously indicated.

In the opinion of the Court, the search was not in violation of the defendant's rights contained in either the Fourth or Fifth Amendment to the Federal Constitution.

For the reasons given, and upon the cases cited, the Court concludes that the motions to suppress evidence must be denied.