STATE of Delaware, Plaintiff,

v.

Edward VOURAS, Defendants.

Francis COLUMBO,

Robert SWIFT,

James J. ENNIS,

Joseph AVERSANO,

Eugene PAPALEO,

Christos SARMOUSAKIS,

Stephen A. SMITH,

Joseph "Mope" MESSINA,

James FERRO,

Jack LUNDY,

Charlie W. ARO,

Michael B. NILAND,

Peter ELEUTHERIOU,

Peggy Ann MILO,

John PERILLO,

Spiros EVANGOLATOS,

Frances ROBINSON.

Superior Court of Delaware, New Castle.

Submitted Oct. 3, 1975.

Decided Jan. 16, 1976.

---

L. Kent Wyatt, Deputy Atty. Gen., Dept. of Justice, Wilmington, for the State of Delaware.

Alfred J. Lindh, Wilmington, for defendants Edward Vouras, Robert Swift and Peggy Ann Milo.

Jay H. Conner, of Conner, Daley & Erisman, Wilmington, for defendants Francis Columbo, James J. Ennis, Joseph Aversano, James Ferro and John Perillo.

Clifford B. Hearn, Jr., of Balick & Hearn, Wilmington, for defendant Stephen A. Smith.

Michael N. Castle, of Schnee & Castle, Wilmington, for defendant Charlie W. Aro.

Joseph W. Benson, of Gallo & Benson, Wilmington, for defendants Eugene Papaleo, Joseph "Mope" Messina and Michael B. Niland.

G. Thomas Sandbach, of Biggs & Battaglia, Wilmington, for defendant Jack Lundy.

Martin A. Schagrin, of Knecht, Greenstein & Berkowitz, Wilmington, for defendants Peter Eleutheriou and Spiros Evangolatos.

CHRISTIE, Judge.

On December 11, 1974, the Attorney General of the State of Delaware submit-

ted an application to Superior Court pursuant to 11 Del.C. § 1336 for an order authorizing the interception of wire communications of "Edward Vouras of the Downtown Business Men's Club at 711 North Market Street, Second Floor, Wilmington, Delaware, and other unknown persons engaged in the illegal operation of gambling activities from telephone facility 652–9897 . . ." The affidavit accompanying the application contained information which indicated that Edward Vouras received and recorded bets over telephone facility 652–9897 and used the same telephone to engage in the giving and receiving of "lay off bets" with other gambling organizations. The affidavit also listed the names and criminal records of thirteen other individuals believed to be associated with Vouras in the gambling operation.

On December 13, 1974, Superior Court entered an order approving the application authorizing intercept between the hours of 12 noon and 11 p. m. for a fifteen day period·from December 14 through 28 of 1974.

The interception operation was subsequently conducted, and evidence derived from it led to the indictment of twenty individuals, six of whom had been referred to by name and criminal record in the application for the wiretap order. The twenty individuals were charged with various gambling offenses as set forth in the appendix to this opinion. In a second indictment, Vouras was once again named and two additional defendants were listed. See appendix.

Charges against four of the original twenty-two defendants were nolle prossed.

The remaining eighteen defendants now move to suppress evidence gathered from the intercepted telephone conversations, advancing the following arguments in support of their motion:

(1) The conversations of all defendants other than Vouras were outside the scope of the court order.

(2) The application for wiretapping authority and the order authorizing the wiretap did not permit the monitoring or recording of conversations to which Vouras was not a party.

(3) The police unlawfully failed to minimize the interception of communications.

(4) The application for authority to wiretap is not in writing· upon oath as required by law.

(5) The Delaware wiretapping statute, 11 Del.C. § 1336(i), violates the Fourth and Fourteenth Amendments of the United States Constitution, Article I, § 6 of the Delaware Constitution, and 18 U. S.C., Chapter 119.

(6) The wiretap order, incorporating the language of 11 Del.C. § 1336(i), is also violative of the same United States and Delaware constitutional and federal statutory demands.

Defendant Lundy also moves to dismiss the charge of conspiracy under 11 Del.C. § 511(1), to violate 11 Del.C. § 1403(3) on the theory that an agreement between two persons to commit a crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission.

Each defendant has adopted the arguments and motions presented by the other defendants. I will deal with these arguments *in seriatim.*

### I

Defendants Papaleo, Messina, Niland, Ennis, Aversano, Ferro and Perillo argue that their conversations were not within the scope of the court order; therefore, under 11 Del.C. § 1336(t)(3), the contents of the intercepted communications, or any evidence derived therefrom, must be suppressed. Defendants base this allegation upon the fact that the court or-

der authorizing the wiretap contains authorization:

". . . to intercept the wire communication of an individual known as Edward Vouras and other *known* persons . . ." (emphasis added)

This is the only place in the order where reference is made to "known" persons. Twice on page 1 of the order and once on page 2, reference is made to the interception of wire communications of "Edward Vouras and other *unknown* persons . . ." (emphasis added).

It is clear that the use of the word "known" on page 3 is a clerical error. This Court will permit the amendment of the order to correct that clerical error. See *United States v. Ceraso,* 355 F.Supp. 126 (D.C.M.D.Pa.1973), where it was held that the court has the power to correct clerical errors in orders.

## II

The defendants further argue that the application for wiretapping authority and the order authorizing the wiretap did not permit the monitoring or recording of conversations to which Vouras was not a party. This argument is based upon Judge Bifferato's holding in *State v. Ira Lee Shy,* 602 Cr.A. 1973 (April 15, 1975) that Shy's conversations must be suppressed since the application for the order recited sufficient information about Shy to constitute probable cause, yet Shy was not named as a "known" party against whom the intercept was directed, as required by 18 U.S.C.A. § 2518(1)(b)(iv) and 11 Del. C. § 1336(h)(3), (i).

In the instant case, only six[1] of the remaining eighteen defendants were even mentioned in the affidavit. As a result, there is no basis for the claim that there was sufficient probable cause to require the naming in the application of the twelve defendants not referred to in the accompa-

nying affidavit. Obviously, this argument is not applicable to defendant Vouras, the only individual identified in the application and order who had also been named in the affidavit. Thus, this argument applies only to Swift, Columbo, Ennis, Aversano and Perillo.

The United States Supreme Court in *United States v. Kahn,* 415 U.S. 143, 94 S. Ct. 977, 39 L.Ed.2d 225 (1974) elucidated the test for determining when a person must be named in the application or interception order, stating:

"Title III requires the naming of a person in the application or interception order only when law enforcement authorities have probable cause to believe the individual is 'committing the offense' for which the wiretap is sought." 415 U.S. at 155, 94 S.Ct. at 984.

By implication, *Kahn* also requires that the applicant have probable cause to believe that the individual's conversations relating to the criminal activity in question will be overheard on the telephone to be tapped. See *United States v. Martinez,* 498 F.2d 464 (6th Cir. 1974); *United States v. Bernstein,* 509 F.2d 996 (4th Cir. 1975).

■ A two-pronged test as to the required naming of individuals in a wiretap application and order has emerged. If the applicant shows that there is probable cause to believe that (a) a person is committing the offense for which the wiretap is sought, and (b) that person would use the telephone covered by the wiretap order, he must be named in the order. *United States v. Curreri,* 368 F.Supp. 757 (Md. 1973), aff'd sub nom., *United States v. Bernstein, supra; United States v. Martinez, supra.*

With regard to defendants Swift, Columbo, Ennis and Perillo, I need not consider whether the first prong of probable cause has been satisfied since it is clear that the second prong has not been satis-

1. Vouras, Swift, Columbo, Ennis, Aversano and Perillo.

fied. No evidence was presented in the application to indicate that the State had probable cause to believe that these four defendants would be conducting illegal activities on the telephone to be tapped. Although the four defendants are listed as known gamblers with extensive criminal records, and it is implied in the application they are part of an extensive gambling operation, there is no tangible evidence to associate any of the four with the use of the telephone covered by the wiretap order.

■ On the other hand, the State should have included defendant Aversano as a "known" person in the wiretap application and order. This point was virtually conceded by the State both in its brief and at argument. In the State's application for the order, both confidential informants state that they heard defendant Vouras speaking over the telephone, which was subsequently tapped, to a "Joe from Norristown, Pennsylvania." Furthermore, a toll call analysis revealed that thirty-eight telephone calls were made from the telephone to be tapped to a number in Norristown, Pennsylvania, listed in the name of Joseph Aversano.

■ The volume of the communications viewed in conjunction with the information supplied by the confidential informants leads me to conclude that the State possessed sufficient probable cause to satisfy both prongs of the aforementioned test and mandates the identification of Aversano as a known party in the wiretap application and order. *State v. Ira Lee Shy, supra.* The State's failure to include Aversano is fatal and necessitates the suppression of any intercept or evidence derived therefrom with regard to Aversano. Defendant Aversano's motion to suppress is granted. The motions to suppress on behalf of the other defendants, however, are denied.

### III

Defendants argue that the intercepted communications must be suppressed be-

cause the police failed to comply with that portion of the wiretap order which required that the intercept "be conducted in such a manner as to minimize or eliminate the interception of such communications not otherwise subject to interception." It is undisputed that the police listened to every conversation, although only conversations considered to be gambling-related were recorded by them.

The minimization requirement is found in both the Federal and State wiretap statutes. 11 Del.C. § 1336(k); 18 U.S.C.A. § 2518(5). The Federal statute was recently examined by the United States Court of Appeals for the Third Circuit, which stated:

"Section 2518(5) does not prohibit the interception of all non-pertinent conversations; rather it requires the government to conduct the wiretap so as to minimize the interception of such calls. The minimization standard is one of the reasonableness of a particular interception, which is to be ascertained on a case-by-case analysis." *United States v. Armocida,* 515 F.2d 29, 42 (3rd Cir., 1975)

In several cases, the interception of all telephone calls under an intercept order has been found not to be in violation of the minimization requirement. *United States v. James,* 161 U.S.App.D.C. 88, 494 F.2d 1007, 1018 (1974); *United States v. Quintana,* 508 F.2d 867, 873 (7th Cir., 1975); *United v. Cox,* 462 F.2d 1293, 1300 (8th Cir., 1972); cert. denied, 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1974).

The courts have identified a number of factors as being of particular relevance in determining whether, in a given wiretap operation, the government's conduct has "avoided unnecessary intrusion and resulted in . . . no greater invasion of privacy . . . than [was] necessary under the circumstances." *Berger v. New York,* 388 U.S. 41, 57, 87 S.Ct. 1873, 1883, 18 L.Ed.2d 1040 (1967).

The United States Court of Appeals for the District of Columbia in *United States v. James, supra* at 1019–21, cited four critical factors to be analyzed in determining the degree of minimization required in a given case. I will examine the facts of the instant case in the light of the *James* criteria.[2]

**(1) Scope of the criminal enterprise under investigation.**

The surveillance in the instant case must be viewed in the light of the *James* criteria. *United States v. Armocida, supra* at 44. Initially, it is apparent that the State, in its application, regarded the Vouras gambling operation as a large-scale conspiracy. In dealing with such an operation, it is often necessary for the government to intercept more conversations than where the investigation is of a more limited criminal undertaking. This is especially so where, as here, the judicially approved purposes of the wiretap are the delineation of the scope of the conspiracy and the identification of its other participants. *United States v. Armocida, supra* at 44, *United States v. Quintana, supra* at 874, *United States v. James, supra* at 1019.

**(2) Location and operation of the subject telephone.**

The location of the wiretapped telephone, a pay-type facility, in the instant case was a place of business, the premises of the Downtown Business Men's Club. Based upon the toll call analysis conducted by the police in this case, the telephone was used almost exclusively for the conduct of Vouras' gambling operation. In *United States v. James,* the court contrasted the minimization requirement imposed upon the government, and mandated by the individual's right to a reasonable expectation of privacy, when a residential or legitimate business telephone is tapped, with the minimization requirement applicable with regard to a telephone located in neither a home nor regular business establishment and used almost exclusively in the conduct of illegal activities. The court stated that the users of the telephone in the latter situation "do not have the expectation of privacy which society accepts and less stringent minimization standards are both reasonable and permitted by Title III," *Id., supra* at 1020.

**(3) Government expectation of the content of the calls.**

Based upon the government's knowledge at the time of the wiretap, the police should design their minimization efforts to fit the situation. As pointed out in *James,* the police can avoid intercepting telephone calls at those times when it is known the telephone is not used for criminal purposes. In the instant case, the telephone conversations were intercepted only during an eleven hour period each day, i. e. 12 noon to 11 p. m. In a further attempt to minimize the intrusion, the police recorded only those telephone calls relating to the criminal activity, although no such limitation was imposed by the court order.

**(4) Judicial supervision by the authorizing judge.**

The authorizing judge gave no specific instructions in his order that the police make periodic reports to him regarding their minimization efforts. The intercept operation was authorized for only a fifteen day period and was, in fact, concluded after nine days. 11 Del.C. § 1336 permits the authorizing judge, if he so desires, to require periodic reports from the State; however, absent specific instructions from the judge, such reports are not required. In view of the short period of intended intercept and the even shorter pe-

---

2. This same analytical approach was noted approvingly and adopted in substantial part by the United States Court of Appeals for this circuit. See *United States v. Armocida, supra* at 44–45.

riod of actual intercept, periodic reports were apparently viewed as unnecessary. I find no error.

On the basis of the foregoing, I hold that the intercept operation conducted by the police was in compliance with both Federal and State statutory requirements. The observation of Judge Garth in *United States v. Armocida, supra* at 45, seems to find application in this case:

"We do not believe that electronic surveillance can be conducted with the total elimination of innocent conversations. Here, the monitoring agents were fully aware of the authorizing judge's instructions to terminate non-pertinent conversations. Yet even if so instructed, agents monitoring an intercept cannot reasonably be expected to distinguish in advance those calls which first appear innocent but which later develop into conversations involving criminal activities."

See also *United States v. Doolittle,* 507 F. 2d 1368, 1372 (5th Cir., 1975), aff'd *en banc,* 518 F.2d 500 (5th Cir., 1975).

Defendants' argument that there was a failure to adequately minimize the interceptions is found to be without merit.

### IV

Defendants' next argument is in two parts. Initially, they argue that the Attorney General's application is invalid since it does not state that the Attorney General affirms that the facts contained in the affidavit of application are true. Secondly, they argue that the affidavit of application fails because it does not contain a jurat.

 Neither 11 Del.C. § 1336(h)(3) nor 18 U.S.C.A. § 2518(1)(b) require the Attorney General to swear or affirm that he believes the facts in the application to be true. The requirement is that the application be in writing and under oath or affirmation and contain "a particular statement of the facts relied upon by the appli-

cant . . ." 11 Del.C. § 1336(h)(3) or "a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued . . ." 18 U.S.C.A. § 2518(1)(b). The Attorney General's application satisfies these requirements.

With regard to defendants' second point, at the suppression hearing on April 14, 1975, I ruled that the absence of a jurat in the affidavit of application in the instant case was not a substantive irregularity and, thus, the affidavit was not fatally defective. No further discussion is necessary at this time.

### V

 Defendants attack the constitutionality of 11 Del.C. § 1336(i) asserting that it violates the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section VI of the Delaware Constitution. Their argument is premised upon a variation in the language contained in 11 Del.C. § 1336(i) from that employed in 18 U.S.C.A. § 2518(3).

Under 18 U.S.C.A. § 2518(3), the court may issue an order upon application:

"[If] the judge determines on the basis of the facts submitted by the applicant that:

\* \* \* \* \* \*

(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;"

The comparable provision in 11 Del.C. § 1336(i) states:

"[I]f the Court determines on the basis of the facts submitted by the applicant that there is or was probable cause for belief that:

\* \* \* \* \* \*

(3) Normal investigative procedures with respect to such offenses have been tried and have failed or reasonably ap-

pear to be unlikely to succeed if tried or to be too dangerous to employ;"

Defendants assert that the two statutes are not equivalent, the State statute requiring a less stringent finding with regard to the feasibility of alternative investigative techniques. Furthermore, defendants argue § 2518 was designed to meet the minimum requirement of *Berger v. New York, supra,* that a wiretap order can be issued only upon a showing of exigent circumstances. Thus, since § 1336 is less stringent than its Federal counterpart, which embodies only minimum constitutional requirements, § 1336 is pictured as being unconstitutional.

In a recent decision, the United States Court of Appeals for the Third Circuit rejected the argument that a higher degree of probable cause was required for a wiretap order than for a normal search warrant. The court stated:

> "[A]ppellants submit that *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); and *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1966) require a more vigorous degree of probable cause for a wiretap than ordinarily required for a search warrant . . . We reject this submission . . .
>
> Probable cause is not a matter of degree. Although *Berger* and *Katz* call for extra vigilance in the supervision of electronic eavesdropping, neither case separates probable cause into degrees. Moreover, no special probable cause requirement can be found in the statutory scheme. 18 U.S.C. 2518(3)(a), (b) and (c). Certainly, if a higher degree of probable cause were intended, Congress would have so stated." *United States v. Falcone,* 505 F.2d 478 (3rd Cir., 1974), cert. denied 420 U.S. 955, 95 S.Ct. 1339, 43 L.Ed.2d 432 (1975).

This conclusion is mirrored in a discussion of § 2518(3)(c) contained in S.Rep. No. 1097, 90th Cong., 2d Sess. 101, U.S.Code Cong. & Admin.News 1968, pp. 2112, 2190 (1968), which states in pertinent part:

> "This requirement [that the judge determine on the basis of the facts submitted to him that normal investigative procedures had been tried and failed, or reasonably appeared to be unlikely to succeed if tried] is patterned after traditional search warrant practice . . . The judgment would involve a consideration of all the facts and circumstances . . . What the provision envisions is that the showing be tested in a practical and common-sense fashion."

Thus, § 2518(3)(c) embodying traditional search warrant practice would require a showing only of probable cause and would not mandate that all alternatives be exhausted before a wiretap is authorized. As stated by the United States District Court for New Jersey in *United States v. Falcone,* 364 F.Supp. 877, 889 (N.J., 1973), aff'd, *supra* at 480 (3rd Cir., 1974), cert. denied, *supra.*

> "[T]he statute does not require that alternate means of investigation, in fact, be tried; the wiretap is not reserved for use only as a last resort."

On the basis of the foregoing, I am satisfied that 11 Del.C. § 1336(i) is in essential conformity with 18 U.S.C.A. § 2518(3)(c) and is not unconstitutional. Defendants' motion to suppress on this argument is denied.

## VI

Since I have upheld the constitutionality of 11 Del.C. § 1336(i), defendants' argument that the wiretap order based upon that provision is unconstitutional is to no avail. Defendants' motion to suppress on this argument is denied.

### Wharton's Rule

█ As a final argument, defendants move for the dismissal of the counts charging conspiracy third degree because of the alleged applicability of "Wharton's Rule" to the indictment. The current edition of Wharton's treatise sets forth Wharton's Rule as follows:

> "An agreement between two persons to commit a particular crime cannot be

prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." 1 Anderson, *Wharton's Criminal Law and Procedure*, § 89, p. 191 (1957).

Defendants assert that the counts charging advancing gambling first degree are subject to this limitation, thus calling for the dismissal of the counts charging conspiracy.

In *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 1292, 43 L.Ed.2d, 616, 625 (1975), the United States Supreme Court stated with regard to the Wharton Rule,

"[I]t has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary."

In Delaware, there is clear evidence of a legislative intent to make the crime of conspiracy separate and distinct from the substantive offense. This is provided in the commentary to the Delaware Criminal Code, § 511, wherein it is stated:

"Section 511 follows the former Delaware law in making conspiracy a separate and distinctive offense from the crime contemplated by the conspirators. Under other provisions of this criminal code, it is clear that conspiracy does not merge with the substantive offense even when the latter is complete . . ."

In view of this clear legislative intent that conspiracy and the substantive offense be treated as separate crimes, I find the Wharton Rule to be inapplicable in this case.

Defendants' motions to suppress and to dismiss are denied. It is so ordered.

## APPENDIX

### First Indictment

Charges, by counts of each offense

| Defendant | Advancing Gambling First Degree (11 Del.C. § 1403) | Advancing Gambling Second Degree (11 Del.C. § 1401) | Conspiracy Third Degree (11 Del.C. § 4511) | Providing Premises for Gambling (11 Del.C. § 1404) | Unlawfully Disseminating Gambling Information (§ 1411)[a] |
|---|---|---|---|---|---|
| Vouras | 5 | | 5 | 1 | 1 |
| Columbo | 3 | | 3 | | 1 |
| Ferro | 1 | | 1 | | 1 |
| Perillo | 1 | | 1 | | 1 |
| Aro | 1 | | 1 | | 1 |
| Papaleo | 1 | | 1 | | 1 |
| Messina | 1 | | 1 | | 1 |
| Niland | 1 | | 1 | | 1 |
| Lundy | 1 | | 1 | | 1 |
| Swift | | 1 | 1 | | 1 |
| Milo | | 1 | 1 | | 1 |
| Ennis | | | 1 | 1 | |
| Eleutheriou | 2 | | 2 | | 1 |
| Sarmousakis | 1 | | 1 | | 1 |
| Smith | 1 | | 1 | | 1 |
| Cella | | | | | 1 |
| Brown | | | | | 1 |
| Kaciuban | | | | | 1 |
| Darpino | 1[b] | | 1[b] | | 1 |
| Aversano | 1 | | 1 | | 1 |

### Second Indictment

| | | | | | |
|---|---|---|---|---|---|
| Vouras | 2 | | **2** | | |
| Evangolatos | 1 | | **1** | | |
| Robinson | 1 | | **1** | | |

[a] Count XIV charging the above defendants with unlawfully disseminating gambling information was nolle prossed.
[b] Charges against Darpino were nolle prossed in exchange for her cooperation with authorities.