UNITED STATES of America,
Plaintiff-Appellee,

v.

Gerald Hay KILGORE and Sam Green,
Defendants-Appellants.

No. 71–3559.

United States Court of Appeals,
Fifth Circuit.

Dec. 12, 1975.

---

James Edward Green, Van Nuys, Cal., for Gerald Kilgore.

E. David Rosen, Miami, Fla., for Sam Green.

Robert W. Rust, U. S. Atty., Miami, Fla., Sidney M. Glazer, John J. Robinson, Attys., Dept. of Justice, R. H. Wallace, Appellate Section, Crim. Div., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

On Petitions for Rehearing and Petitions for Rehearing En Banc

Before RIVES, GEWIN and GOLDBERG, Circuit Judges.

PER CURIAM:

■ Both Kilgore and Green have filed petitions for rehearing, urging this Court to reconsider its affirmance of their convictions. We find nothing in Green's petition that would require a different result, nor does Kilgore's petition disturb our holding that the electronic surveillance of Green's telephone was legal.[1] Kilgore raises several points that merit discussion, however, with regard to the admissibility of the evidence from the Green tap against him.

Two questions are presented here for our reconsideration: whether the district court gave an adequate evidentiary hearing on the question of the Government's alleged bad faith in not naming Kilgore in the Florida application, and whether Kilgore was prejudiced in any way by the Government's failure to name him. Unless Kilgore can show either bad faith or prejudice, his claims are foreclosed by our decision in *United States v. Doolittle*, 5 Cir., (en banc) 1975, 518 F.2d 500, *affirming* 507 F.2d 1368. In *Doolittle*, there was substantial compliance with the inventory provisions of section 2518(9), no demonstrated prejudice to the defendants and no indication of bad faith on the Government's part. Under those circumstances, the fact that the wire tap authorization did not name the defendants, even though they were actually known to the Government, did not require suppression of the evidence gathered in the tap against them.[2] Thus, constrained as we are to follow the law of this Circuit, Kilgore must show that he is not within *Doolittle* before we would be able to grant him relief.

Some additional facts are necessary to place our consideration of Kilgore's allegations in perspective. As our first opinion indicated, the Florida application to tap Green's telephone named only Green and "others yet unknown" in

---

1. We would like to make one point clear at the outset. Even if the Government had conducted illegal wiretaps on Kilgore in the past, Green would not be immunized from surveillance. If Green could take advantage of Kilgore's past experiences, the Government would effectively be precluded from investigating anyone who had been tapped before. We cannot believe that Congress intended this result. Thus, the greatest relief to which Kilgore would be entitled would be suppression of the evidence from the Green tap.

2. *But see United States v. Donovan*, 6 Cir. 1975, 513 F.2d 337, petition for cert. filed, 44 U.S.L.W. 3164 (U.S. Sept. 30, 1975) (No. 75–212); *United States v. Bernstein*, 4 Cir. 1975, 509 F.2d 996, petition for cert. filed, 43 U.S. L.W. 3637 (U.S. May 27, 1975) (No. 74–1486).

paragraph 3, which listed the persons whom the Government sought to intercept. Paragraph 5 represented that no previous applications had been filed to intercept any of the "known person's" communications—in other words, Green's. However, paragraph 5 went on to reveal that a previous application had been made to tap Kilgore's telephone in California, and that Green had been intercepted pursuant to that authorization. Nowhere did the application mention one prior Georgia wiretap and several prior California wiretaps in which Kilgore had been overheard. Kilgore now alleges that the Government's failure to name him in its Florida application for a tap on Green constituted bad faith on its part and operated to his prejudice. According to his allegations, the Government's motive in failing to name him was to avoid the necessity of revealing the prior wiretaps that involved him. Had these taps been disclosed, he argues, the judge who passed on the Florida application would have found it unnecessary as to him, both as an evidence-gathering mechanism and in terms of the statute's minimization directive. Furthermore, Kilgore argues that the prior California wiretap mentioned in the Florida application was illegal and that evidence from this illegal tap tainted the Florida application.

Recognizing the fact that Kilgore's allegations raised serious questions about the Florida tap, the district court ordered an evidentiary hearing on its validity in connection with Kilgore's motion to suppress. He refused to include within the scope of this hearing any consideration of the prior wiretaps on Kilgore. At the hearing, he acknowledged that some question existed about the le-

gality of the California tap. As a cautionary measure, therefore, he struck all references to the California tap that went to the question of probable cause to tap Green. On the basis of the remaining information, he decided that sufficient probable cause still existed to support the tap on Green's telephone.[3] Defendants' challenge to this finding is without merit. Thus, after the district court's curative action, the Florida application was valid on its face. Unless the Government had procured it in bad faith, or unless Kilgore was prejudiced by the omission of his name, *Doolittle* would support the court's denial of the motion to suppress. The narrow question before us is whether the evidentiary hearing was sufficient to answer these questions, or whether we should remand this case for further proceedings.[4]

■ 1. *Was the Government in bad faith when it did not name Kilgore?* The first question we must meet is that of the Government's motive in not naming Kilgore in its application. From a reading of the record at the hearing on the motion to suppress, we see that the court did consider this question. The testimony of the Government's attorney who prepared the application frankly reflects his belief that it was unnecessary to name Kilgore for a surveillance whose purpose was primarily to intercept Green. In cross-examination, Kilgore's attorney clearly pointed out the statutory requirement of naming the persons whose communications were to be intercepted. Since the district court decided to deny the motion to suppress, he must have found implicitly that the Government was not in bad faith when it omitted Kilgore's name. Surely if he had agreed that the Government was deliber-

---

**3.** *United States v. Giordano*, 1974, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341, does not disapprove this procedure. *Giordano* holds that a judge may not disregard the results of a tainted original tap when he is considering the validity of an *extension*, since that procedure would be a direct violation of 18 U.S.C. § 2518(1)(f). However, we agree with Justice Powell's characterization of the majority opinion where he states that it casts no doubt on

the proposition that the independent source rule is fully applicable to original orders. See 416 U.S. at 517 n. 7, 94 S.Ct. at 1827 n. 7, 40 L.Ed.2d at 378 n. 7.

**4.** We note that since the court did not have the benefit of our decision in *Doolittle*, the issues were not framed as precisely as they might have been.

ately disobeying the statute, he would have delved further into the question.[5] Thus the legality of the Florida application was not tainted by bad faith in failing to name Kilgore, and the first premise of *Doolittle* is satisfied.

■■■ 2. *Was Kilgore prejudiced by the absence of his name?* The second prerequisite which must be met before we can apply *Doolittle* to this situation is the lack of prejudice to Kilgore. The question is this: Would the district judge who approved the Florida application have placed any additional limitations on the use of the evidence or on the surveillance conducted if Kilgore's name and the prior wiretaps had been disclosed? We think the answer to this question must be no, regardless of the details of the prior taps involving Kilgore. First, disclosure of Kilgore's name would not have affected the existence of the tap on Green, for as the Government stated, the tap was necessary for their investigation of Green. Kilgore argues that the Florida tap was not "necessary" for him; however, we think that the necessity requirement of section 2518(1)(c) and (3)(c) refers to the technique used, which relates in turn to the nature of the crime. His main point, then, is that the statute's requirement that electronic surveillance be minimized was violated. The rationale behind this requirement dictates that the Government agents conducting the surveillance not listen to conversations that do not relate to the criminal activity that is the focus of the investigation. It also requires minimiza-

tion of the number of days or weeks of surveillance.[6]

Here, the agents literally could not have listened to Green's conversations related to the criminal activity without also listening to Kilgore. Thus, no matter how much the approving judge minimized the surveillance, Kilgore would have been overheard. Additionally, some good faith doubt may have existed with regard to the previous taps on Kilgore which would have caused the judge to approve yet another tap on him. Finally, this was not a case where the tap on Green was just an underhanded way to tap Kilgore: witnesses testified, and the district court found, that Green was the primary target of this tap. We conclude from all the circumstances that Kilgore was not prejudiced by the omission of his name from the Florida application.

■■ *Doolittle* also sets up a third prerequisite to its application: the defendant must receive an inventory of the surveillance conducted prior to the trial. Though some dispute exists on this point, we find that the district court was not clearly erroneous in concluding that Kilgore did receive the inventory in time.

Since we find that the three premises upon which our *Doolittle* holding was based were all satisfied here, the district court was correct in ruling that the evidence from the Green tap could come in against Kilgore despite the fact that Kilgore was not named in the application. Under the circumstances, a separate evidentiary hearing on the prior surveillances involving Kilgore was not necessary.[7]

---

5. We note that a question which later found the Fourth and Sixth Circuits on one side and the Fifth on the other—that is, who must be named in an application—cannot be said to be so simple that the Government was in bad faith to adopt one interpretation of the statute over another. Furthermore, we may not disturb a credibility finding such as this unless it is clearly erroneous.

6. The legislative history indicates that Congress wanted to insure that the showing of probable cause would not become stale because of governmental delay. *See* S.Rep.No. 1097, 90th Cong., 2d Sess. (1968) (1968 U.S. Code Cong. & Admin.News at p. 2192). In

this case, the surveillance lasted only seven days.

7. Our finding that these prior taps on Kilgore were irrelevant to the Green application moots the dispute whether Kilgore was a central figure in the Georgia tap or whether he was only peripherally involved, as we found in our first opinion. Had we found prejudice to Kilgore, a hearing would have been necessary in order to decide whether the evidence from the Green tap should have been suppressed. *See* § 2518(10).

We note that the hearing the court did hold was absolutely necessary, given the allegations

Except as modified herein, we adhere to our original opinion and deny the petitions for rehearing.

The Petitions for Rehearing are denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petitions for Rehearing En Banc are denied.

Denied.

in Kilgore's motion to suppress. If he had refused to investigate the legality of the Florida application, we would have been forced to remand this case to him for further consideration.