**UNITED STATES of America,**

v.

**Joseph MASSINO and Salvatore Vitale, Defendants.**

**No. SSSS 81 Cr. 803 (RWS).**

United States District Court,
S.D. New York.

Dec. 22, 1986.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for U.S.; Helen Gredd, Michael Chertoff, Asst. U.S. Attys., of counsel.

David Breitbart, New York City, for defendant Joseph Massino.

Slotnick, Cutler & Baker, New York City, for defendant Salvatore Vitale; Barry Ivan Slotnick, Mark M. Baker, Bruce Cutler, of counsel.

MEMORANDUM OPINION ·

SWEET, District Judge.

Defendant Salvatore Vitale ("Vitale") has moved by letter dated November 10, 1986, pursuant to 18 U.S.C. § 2518(1)(e), to suppress electronically intercepted conversations from the home of Angelo Ruggiero ("Ruggiero"). A hearing on this issue is hereby granted.

Vitale contends that Special Agent Donald W. McCormick ("McCormick") of the Federal Bureau of Investigation perjured himself in each of succeeding applications for electronic eavesdropping authority and that as a result those interceptions should be suppressed.

It is undisputed that, at the time of McCormick's applications to the federal court for electronic eavesdropping authority, McCormick knew that the Queens District Attorneys Office was conducting an investigation into illegal activities at the Bergen Hunt & Fish Club that included electronic surveillance. The sole factual issue is whether McCormick knew that Angelo Ruggiero, John Gotti and Eugene Gotti were named interceptees in Queens County District Attorney's Bergen Hunt and Fish orders.

The application for an order authorizing the interception of a wire or oral communication under 18 U.S.C. §§ 2510–2520 must include:

> a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application....

18 U.S.C. § 2518(1)(e). The statute requires only that the affiant disclose prior applications for *authorization* to intercept the named interceptees. Therefore, McCormick was required to report that Ruggiero had been intercepted in a previous electronic surveillance only if Ruggiero was named in the application, not if his conversations were merely intercepted inadvertently during the course of a prior surveillance of another person. *See United States v. Easterling*, 554 F.2d 195, 196 (5th Cir.1977) (per curiam); *United States v. Sklaroff*, 552 F.2d 1156, 1160 (5th Cir. 1977), *cert. denied*, 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978).

In his original affidavit, signed November 9, 1981, McCormick stated:

No other application is known to have been made to any judge for authorization to intercept wire communications making Angelo Ruggiero, John Gotti, Eugene Gotti, and Jackie Cvallo. Frank Guidici was a principal in an Order to Intercept Oral Communications, EDNY 190, signed by U.S. District Court Judge Mark A. Constantino on May 28, 1975.

The subsequent affidavits likewise speak of applications known to have been made for authorization to intercept the individuals named in the pending Title III application. No representation was made with respect to whether McCormick knew of any electronic surveillance at other locations that may have been frequented by the named interceptees.

Vitale urges this court to infer that McCormick did know that Ruggiero, John Gotti and Eugene Gotti were named interceptees in the prior applications from the fact that McCormick had had conversations with local law enforcement authorities about an investigation at the Bergen Hunt & Fish Club, that he knew that state applications had been made, and that he knew that electronic surveillance was being conducted at that location.

The Honorable Eugene H. Nickerson and the Honorable Mark A. Constantino have denied without a hearing similar applications regarding these tapes, *see, e.g.,* Memorandum of Decision and Order, *United States v. Ruggiero,* No. 83 Cr. 412 (E.D. N.Y. Sept. 24, 1986) (Constantino, J.).

Because any persons with personal knowledge that McCormick was aware of the prior named interceptees are probably law enforcement officials and not likely to cooperate with defendants, the absence of personal affidavits may not provide sufficient grounds to deny a suppression motion without a hearing. *Cf. United States v. Gillette,* 383 F.2d 843, 848 (2d Cir.1967); *United States v. Gregory,* 611 F.Supp. 1033, 1044 (S.D.N.Y.1985). McCormick's own admission that he knew of the criminal investigation surrounding the Bergen Hunt & Fish Club and the electronic surveillance there could support an inference that he had conferred with the state officials and may have learned who the named interceptees were. *Cf. Sklaroff, supra,* 552 F.2d at 1160 ("no inference that [the Government] was trying to hide any previous interceptions is justified"); *United States v. Harvey,* 560 F.Supp. 1040, 1073 (S.D.Fla. 1982) (while it was an obvious inference that defendant might have been intercepted in previous wiretaps, the agents "did not know for a fact that [defendant's] communications had been intercepted on the state wiretap; the state investigators had not told them this, nor did they know of the contents of the state interception" at the time of the federal application), *aff'd sub nom. United States v. Van Horn,* 789 F.2d 1492 (11th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 190, 93 L.Ed.2d 124 (1986). Although McCormick has stated that he was aware of the electronic surveillance at the Bergen Hunt & Fish Club and did not know who the named interceptees were in the orders issued by the New York State judge, it is appropriate to have the assertion of his knowledge tested by a hearing. An evidentiary hearing will be held at a date in early January convenient to counsel.

IT IS SO ORDERED.